IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER GENTILE, and JUAN A. CRAWFORD,

Plaintiffs,

v.

CASSI CREDEDIO, and KEVIN DOYLE,

Defendants.

Case No. 1:21-cv-08528 (VSB)

**ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Defendant Kevin Doyle, by his attorneys, Cravath, Swaine & Moore LLP, for his Answer, Affirmative Defenses and Counterclaim in response to Plaintiffs' First Amended Complaint, avers as follows:

## <u>ANSWER TO FIRST AMENDED COMPLAINT</u>

1.     Mr. Doyle denies the allegations of paragraphs 1, except admits that Plaintiffs purport to bring a civil action asserting copyright infringement in violation of the copyright laws of the United States, 17 U.S.C. § 101 et seq., including 17 U.S.C. § 411(a).

2.     Mr. Doyle denies the allegations of paragraph 2, except admits that he registered copyrights with the United States Copyright Office (the "U.S. Copyright Office") bearing the registration numbers PAu004052332 and PAu004054496 and refers to those copyrights for their contents.  Mr. Doyle further admits he registered PAu004052332 as a derivative work with Ms. Crededio's consent.  Mr. Doyle further admits that Ms. Crededio registered a copyright bearing copyright registration number PAu004003038 on November 15, 2019 and refers to this copyright for its contents.  Mr. Doyle further states he is the sole and exclusive author of the works he

registered with the U.S. Copyright Office and did not require the consent or explicit

authorization of Mr. Gentile or Mr. Crawford to register his copyrights.

3.      Mr. Doyle denies the allegations of paragraph 3.

4.      Mr. Doyle is without knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 4.

5.      The allegations of paragraph 5 purport to state a legal conclusion to which no

response is required.  To the extent a further response is required, Mr. Doyle is without

knowledge or information sufficient to form a belief as to the truth of the allegations of

paragraph 4, except states that Ms. Crededio registered a copyright bearing the copyright

registration number PAu004003038 and refers to that copyright for its contents.

6.      The allegations of paragraph 6 purport to state a legal conclusion to which no

response is required.  To the extent a further response is required, Mr. Doyle is without

knowledge or information sufficient to form a belief as to the truth of the allegations of

paragraph 6, except states that Ms. Crededio registered a copyright bearing the copyright

registration number PAu004003038 and refers to that copyright for its contents.

7.      The allegations of paragraph 7 purport to state a legal conclusion to which no

response is required.  To the extent a further response is required, Mr. Doyle denies the

allegations of paragraph 7 except admits that he registered copyrights bearing the registration

numbers PAu004052332 and PAu004054496 and refers to those copyrights for their contents.

Mr. Doyle further admits that he registered PAu004052332 as a derivative work with Ms.

Crededio's consent.

8.      Mr. Doyle denies the allegations of paragraph 8.

9.      Mr. Doyle denies the allegations of paragraph 9, except states that he is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Mr. Gentile's current address, except admits that Mr. Gentile is a United States citizen who resided in New York as of October 2020.

10.     Mr. Doyle denies the allegations of paragraph 10, except states that he is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Mr. Crawford's residence.

11.     The allegations of paragraph 11 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle states he is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Crededio.

12.     Mr. Doyle denies the allegations of paragraph 12.  Mr. Doyle currently resides in Estonia.  Mr. Doyle has been living in Europe since November 2019 but also maintains a residence in Nassau County, New York.  At all times relevant to the Complaint, Mr. Doyle was in Europe.

13.     The allegations of paragraph 13 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle denies the allegations of paragraph 13, except admits that Plaintiffs purport to bring a declaratory judgment action under 28 U.S.C. §§ 2201 and 2202 and 17 U.S.C. § 101 *et seq.*, including 17 U.S.C. § 411(a).

14.     The allegations of paragraph 14 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle denies the allegations of paragraph 14.

15.     The allegations of paragraph 15 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle denies the allegations of paragraph 15 and further states that he has resided in Europe at all times relevant to the complaint and maintains a residence in Nassau County, New York, which is situated in the Eastern District of New York.  Mr. Doyle further states he is without knowledge and information sufficient to form a belief about where Mr. Crawford lives or lived during the time period at issue in the Complaint.

16.     The allegations of paragraph 16 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle denies the allegations of paragraph 16.

17.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17.

18.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18.

19.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19.

20.     Mr. Doyle denies the allegations of paragraph 20.

21.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21.

22.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22.

23.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23.

24.     The allegations of paragraph 24 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle states he is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24.

25.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25.

26.     The allegations of paragraph 26 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle states he is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26.

27.     The allegations of paragraph 27 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle states he is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27.

28.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28.

29.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29.

30.     The allegations of paragraph 30 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle states he is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30.

31.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31.

32.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32.

33.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33.

34.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34.

35.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 35.

36.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 36.

37.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 37.

38.     The allegations of paragraph 38 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle states he is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38.

39.     Mr. Doyle denies the allegations of paragraph 39.

40.     The allegations of paragraph 40 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle states he is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 40.

41.     The allegations of paragraph 41 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle denies the allegations of paragraph 41.

42.     Mr. Doyle denies the allegations of paragraph 42.

43.     Mr. Doyle denies the allegations of paragraph 43.

44.     Mr. Doyle denies the allegations of paragraph 44, except states that he is without knowledge or insufficient to form a belief about the unnamed "various individuals" referred to in paragraph 44.

45.     The allegations of paragraph 45 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle states he is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 45.

46.     The allegations of paragraph 46 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle states he is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 46.

47.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47.

48.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 48.

49.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 49.

50.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 50.

51.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 51.

52.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 52.

53.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 53.

54.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 54.

55.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 55.

56.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 56.

57.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 57.

58.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 58.

59.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 59.

60.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 60.

61.    Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 61.

62.    Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 62.

63.    Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 63.

64.    Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 64.

65.    Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 65.

66.    The allegations of paragraph 66 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle states he is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 66.

67.    Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 67.

68.    Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 68.

69.    The allegations of paragraph 69 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle states he is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 69.

70.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 70.

71.     The allegations of paragraph 71 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle states he is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 71, except states that Ms. Crededio registered a copyright bearing registration number PAu004003038 and refers to that copyright for its contents.

72.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 72.

73.     The allegations of paragraph 73 purport to state a legal conclusion to which no response is required.  To the extent a further response is requited, Mr. Doyle states he is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 73, except states, on information and belief, that Ms. Crededio was the sole and exclusive author of the copyright bearing registration number PAu004003038.

74.     The allegations of paragraph 74 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle states he is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 74.

75.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 75.

76.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 76.

77.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 77.

78.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 78.

79.     Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 79.

80.     Mr. Doyle denies the allegations of paragraph 80, except admits he has known Mr. Gentile for over 20 years.

81.     Mr. Doyle denies the allegations of paragraph 81.

82.     Mr. Doyle denies the allegations of paragraph 82.

83.     Mr. Doyle denies the allegations of paragraph 83.

84.     Mr. Doyle denies the allegations of paragraph 84, except admits that Mr. Doyle occasionally communicated with Plaintiffs by Whatsapp's messaging and voice call features.

85.     Mr. Doyle denies the allegations of paragraph 85, except admits he exchanged Whatsapp messages with Mr. Gentile on April 28, 2020 and refers to those messages for their contents.

86.     Mr. Doyle denies the allegations of paragraph 86, except admits that he exchanged Whatsapp messages with Mr. Gentile on August 24, 2020 and refers to those messages for their contents.

87.     Mr. Doyle denies the allegations of paragraph 87.

88.     Mr. Doyle denies the allegations of paragraph 88.

89.     Mr. Doyle denies the allegations of paragraph 89.

90.     Mr. Doyle denies the allegations of paragraph 90.

91.    Mr. Doyle denies the allegations of paragraph 91.

92.    Mr. Doyle denies the allegations of paragraph 92.

93.    Mr. Doyle denies the allegations of paragraph 93.

94.    Mr. Doyle denies the allegations of paragraph 94.

95.    Mr. Doyle denies the allegations of paragraph 95.

96.    Mr. Doyle denies the allegations of paragraph 96.

97.    Mr. Doyle denies the allegations of paragraph 97.

98.    Mr. Doyle denies the allegations of paragraph 98.

99.    Mr. Doyle denies the allegations of paragraph 99.

100.    Mr. Doyle denies the allegations of paragraph 100.

101.    Mr. Doyle denies the allegations of paragraph 101.

102.    Mr. Doyle denies the allegations of paragraph 102.

103.    Mr. Doyle denies the allegations of paragraph 103.

104.    Mr. Doyle denies the allegations of paragraph 104.

105.    Mr. Doyle denies the allegations of paragraph 105.

106.    Mr. Doyle denies the allegations of paragraph 106.

107.    Mr. Doyle denies the allegations of paragraph 107.

108.    Mr. Doyle denies the allegations of paragraph 108.

109.    Mr. Doyle denies the allegations of paragraph 109.

110.    Mr. Doyle denies the allegations of paragraph 110.

111.    Mr. Doyle denies the allegations of paragraph 111.

112.    Mr. Doyle denies the allegations of paragraph 112.

113.    Mr. Doyle denies the allegations of paragraph 113.

114.    Mr. Doyle denies the allegations of paragraph 114.

115.    Mr. Doyle denies the allegations of paragraph 115.

116.    Mr. Doyle denies the allegations of paragraph 116.

117.    Mr. Doyle denies the allegations of paragraph 117.

118.    Mr. Doyle denies the allegations of paragraph 118.

119.    Mr. Doyle denies the allegations of paragraph 119.

120.    Mr. Doyle denies the allegations of paragraph 120.

121.    Mr. Doyle denies the allegations of paragraph 121.

122.    Mr. Doyle denies the allegations of paragraph 122.

123.    Mr. Doyle denies the allegations of paragraph 123.

124.    Mr. Doyle denies the allegations of paragraph 124.

125.    Mr. Doyle denies the allegations of paragraph 125.

126.    Mr. Doyle denies the allegations of paragraph 126.

127.    Mr. Doyle denies the allegations of paragraph 127.

128.    Mr. Doyle denies the allegations of paragraph 128, except admits that Mr. Doyle registered copyrights bearing registration numbers PAu004052332 and PAu004054496 on October 10, 2020 and September 21, 2020 respectively, Mr. Doyle informed Plaintiffs of his registration on October 17, 2021.

129.    Mr. Doyle admits that his October 10, 2020 registration of copyright bearing registration number PAu004052332 lists Ms. Crededio as providing Mr. Doyle with permission to file his registration under the "Rights and Permission" section of the registration.

130.    Mr. Doyle denies the allegations of paragraph 130.

131.    Mr. Doyle denies the allegations of paragraph 131, except admits that he received a cease and desist letter dated October 20, 2020 from Plaintiffs and refers to the letter for its contents.

132.    Mr. Doyle denies the allegations of paragraph 132, and further states that he responded to Plaintiffs' cease and desist letter by email on October 31, 2020, except admits, based on publicly available information, that Plaintiffs registered a copyright for the dramatic work and music "Untitled Wyoming Project" a.k.a. Monarch with the U.S. Copyright Office on November 27, 2020.

133.    Mr. Doyle is without knowledge or information sufficient to form a belief to the truth of the allegations of paragraph 133, except admits, based on publicly available information, that Plaintiffs registered a copyright for the dramatic work and music "Untitled Wyoming Project" a.k.a. Monarch with the U.S. Copyright Office on November 27, 2020.

134.    Mr. Doyle denies the allegations of paragraph 134.

135.    Mr. Doyle denies the allegations of paragraph 135, except admits that he received a cease and desist letter dated October 20, 2020 from Plaintiffs.

136.    Mr. Doyle denies the allegations of paragraph 136, except admits that Plaintiffs sent Ms. Crededio a cease and desist letter dated November 27, 2020.  Mr. Doyle further states, on information and belief, that Ms. Crededio had the authority to give permission, and did give permission, to Mr. Doyle to file his own copyright, on which Mr. Doyle reasonably relied in registering his copyright bearing registration number PAu004052332.

137.    Mr. Doyle is without knowledge or information sufficient to form a belief to the truth of the allegations of paragraph 137, except admits, based on publicly available information,

14

that Plaintiffs' copyright for the work "Untitled Wyoming Project" a.k.a. Monarch was registered by the U.S. Copyright Office on November 27, 2020.

138.    Mr. Doyle denies the allegations of paragraph 138, except admits that his former counsel sent a letter dated March 05, 2021 in response to the original cease and desist letter sent by Plaintiffs Mr. Gentile and Mr. Crawford.

139.    Mr. Doyle is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 139.

140.    In response to the allegations set forth in paragraph 140, Mr. Doyle repeats and realleges his responses to paragraphs 1-139.

141.    The allegations of paragraph  purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle denies the allegations of paragraph 141.

142.    The allegations of paragraph 142 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle denies the allegations of paragraph 142.

143.    The allegations of paragraph 142 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle denies the allegations of paragraph 143.

144.    The allegations of paragraph 144 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle denies the allegations of paragraph 144.

145.    In response to the allegations set forth in paragraph 145, Mr. Doyle repeats and realleges his responses to paragraphs 1-144.

146.    Mr. Doyle denies the allegations of paragraph 146.

147.    The allegations of paragraph 147 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, on information and belief, Mr. Doyle denies the allegations of paragraph 147.

148.    The allegations of paragraph 148 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, on information and belief, Mr. Doyle denies the allegations of paragraph 148.

149.    The allegations of paragraph 149 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, on information and belief, Mr. Doyle denies the allegations of paragraph 149.

150.    In response to the allegations set forth in paragraph 150, Mr. Doyle repeats and realleges his responses to paragraphs 1-149.

151.    The allegations of paragraph 151 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle denies the allegations of paragraph 151.

152.    The allegations of paragraph 152 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle denies the allegations of paragraph 152.

153.    The allegations of paragraph 153 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle denies the allegations of paragraph 153.

154.     The allegations of paragraph 154 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle denies the allegations of paragraph 154.

155.     The allegations of paragraph 155 purport to state a legal conclusion to which no response is required.  To the extent a further response is required, Mr. Doyle denies the allegations of paragraph 155.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiffs are barred from pursuing their claims in this district because venue is improper.

### Second Affirmative Defense

Plaintiffs do not own a valid copyright.

### Third Affirmative Defense

Mr. Doyle did not infringe the copyright bearing registration number PAu004057984.

### Fourth Affirmative Defense

While Mr. Doyle disputes that Plaintiffs meaningfully contributed to the script such that they can fairly be considered "authors" in any sense, if this Court finds that Plaintiffs and Mr. Doyle co-authored the work, it must dismiss the claim against Mr. Doyle because coauthors cannot sue one another for copyright infringement.

### Fifth Affirmative Defense

Plaintiffs fail to state a claim for which relief can be granted.

### Sixth Affirmative Defense

Mr. Doyle's use of the work in question, if it occurred at all, was a legally protected fair use of the allegedly infringed work.

### Seventh Affirmative Defense

Plaintiffs authorized, impliedly or explicitly, Mr. Doyle's alleged infringing use of its works, and their claims are therefore barred by the doctrine of implied license.

### Eighth Affirmative Defense

Mr. Doyle was not aware and had no reason to believe that his acts constituted an infringement of copyright.

### Ninth Affirmative Defense

Plaintiffs' claims for recovery of damages are barred, in whole or part, by plaintiffs' failure to avoid, minimize or mitigate the alleged damages.

### Tenth Affirmative Defense

Plaintiffs, by their own acts and omissions, have waived any right to recover under the causes of action that they allege in the Complaint.

### Eleventh Affirmative Defense

Plaintiffs, as a result of their own acts and omissions, are estopped, in whole or in part, from obtaining the relief they seek in the Complaint.

### Twelfth Affirmative Defense

Any damages recoverable by Plaintiffs are subject to Mr. Doyle's right, solely at the option of Mr. Doyle, to the affirmative defense of setoff and/or recoupment, in an amount up to and including damages, along with any interests, costs and attorneys' fees, awarded to Mr. Doyle pursuant to judgment against Counterclaim-Defendants on Mr. Doyle's Counterclaim.

## COUNTERCLAIM

Counterclaim Plaintiff Kevin Doyle states as follows:

1.      Counterclaim Plaintiff Kevin Doyle brings this action against Counterclaim Defendants Christopher Gentile and Juan Antonio Crawford for willful infringement of Mr. Doyle's exclusive copyrights associated with his work on the television series, "Wonderland:  The Equality State."  Mr. Doyle owns three registered copyrights in connection with his work on the series:  PAu004052332, PAu004054496, and PAu0004110648.

2.      The action arises from Mr. Gentile and Mr. Crawford's efforts to extract free labor from Mr. Doyle and pass off his original work as their own.  By registering copyright bearing Registration Number PAu004057984, which incorporates language, characters, dialogue, stage direction and entire scenes conceived of and written exclusively by Mr. Doyle, Mr. Gentile and Mr. Crawford have willfully infringed Mr. Doyle's copyrights.

3.      On information and belief, Mr. Gentile and Mr. Crawford are continuing to distribute Mr. Doyle's copyrighted work to talent and production agencies without Mr. Doyle's consent.  By distributing Mr. Doyle's work without his permission, Mr. Gentile and Mr. Crawford are willfully infringing Mr. Doyle's copyrights.

4.      Mr. Doyle is entitled to: (1) a declaration that he is the true and exclusive owner of Wonderland:  The Equality State; (2) a declaration that Mr. Crawford and Mr. Gentile's copyright is invalid; (3) an injunction preventing Mr. Crawford and Mr. Gentile from further infringing Mr. Doyle's work; and (4) statutory and/or actual damages.

## PARTIES

5.      Counterclaim Plaintiff Kevin Doyle is an accomplished playwright and theater

director who resides in Europe and maintains a residence in Nassau County, New York.

Mr. Doyle's work has been reviewed in the *New York Times* on four separate occasions.  He has

been nominated for and has received many awards for his playwriting and theater work.

6.      Counterclaim Defendant Christopher Gentile is an actor with no writing

experience.  In the Complaint, Mr. Gentile avers that he resides in New York, New York.

7.      Counterclaim Defendant Juan Antonio Crawford is also an actor with no writing

experience.  In the Complaint, Mr. Crawford avers that he resides in New York, New York.

## JURISDICTION AND VENUE

8.      This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and

2202, and for copyright infringement in violation of the copyright laws of the United States, 17

U.S.C. § 101 *et seq*., including 17 U.S.C. § 411(a).

9.      This Court has subject matter jurisdiction of this action pursuant to the Copyright

Act and the Judicial Code, 28 U.S.C. §§ 1331 and 1338(a).

10.      As set forth in Mr. Doyle's Answer and Affirmative Defenses to Mr. Gentile and

Mr. Crawford's Complaint, this venue is not proper for Mr. Gentile and Mr. Crawford's claims

against Mr. Doyle.  However, in light of the fact that Mr. Doyle's counterclaims are compulsory

under Federal Rule of Civil Procedure 13(a), he brings his counterclaims in the venue

Mr. Gentile and Mr. Crawford selected.

11.      This Court has personal jurisdiction over Mr. Gentile and Mr. Crawford because

Mr. Gentile and Mr. Crawford have judicially admitted that they reside in New York.

## FACTS

### A.  MR. GENTILE ASKS MR. DOYLE TO WRITE FOR A TELEVISION SERIES.

12.     After completing a prestigious writing fellowship in Finland, an artist in residency program in Estonia, and an artist in residency program in Minnesota, Counterclaim Plaintiff Kevin Doyle went to New York in early November 2019.

13.     Upon his arrival, he received two emails from Counterclaim Defendant Chris Gentile—an old friend from college and actor.  Mr. Gentile wrote that he wanted to "run something by" Mr. Doyle next time Mr. Doyle was in Manhattan.  Mr. Doyle received another email from Mr. Gentile again four days later saying Mr. Gentile had "a biz proposition" for Mr. Doyle.

14.     Mr. Doyle agreed to meet Mr. Gentile the following day at Mr. Gentile's apartment.  Mr. Gentile showed Mr. Doyle a rough draft script for the "Untitled Wyoming Project"—a television pilot about a madam at an 1800s Wyoming brothel.  Mr. Gentile represented that he and Mr. Crawford had written the rough draft of the script (the "Original Pilot Rough Draft").  Mr. Doyle did not learn until 11 months later that a woman named Cassi Crededio had actually written the Original Pilot Rough Draft.

15.     Mr. Gentile asked Mr. Doyle to revise the Original Pilot Rough Draft and write a second episode ("Episode 2").  Mr. Doyle agreed to review the Original Pilot Rough Draft and consider taking on the project.

16.     Over the next two days, Mr. Doyle reviewed the Original Pilot Rough Draft. Although Mr. Doyle believed the Original Pilot Rough Draft needed a lot of work, he believed the idea for the series had potential.  Mr. Doyle told Mr. Gentile he was willing to be the writer for the project.  Mr. Gentile told Mr. Doyle there was "no money" for the project now, but if the

series took off, Mr. Doyle would be compensated and would "have a seat at the table as the lead writer" of the series.  Mr. Doyle agreed to take on the project.  Mr. Gentile did not, at this point or any other point, present a written contract to Mr. Doyle.

17.    At all relevant times, Mr. Doyle, Mr. Crawford, and Mr. Gentile understood and intended that Mr. Doyle would be the sole writer on the project.  While Mr. Crawford and Mr. Gentile would continue to contribute notes and ideas, Mr. Doyle would be the author of the project.  At no point, did Mr. Doyle consider Mr. Crawford or Mr. Gentile to be his "co-authors".

18.    Mr. Doyle departed for Europe the following morning where he remained at all times relevant to the Complaint and this Counterclaim.  During his travels, Mr. Doyle began researching the Wyoming Territory in the 19th Century and learned about Louisa Swain and Esther Morris—women instrumental in the women's suffrage movement in Wyoming.  Mr. Doyle conducted extensive research into the women's suffrage movement in the Wyoming territory and decided to rework the series, incorporating this new, unique angle.  With this new direction for the project in mind, Mr. Doyle began writing Episode 2 and revising the Original Pilot Rough Draft.

19.    With the understanding that Mr. Doyle would be writing Episode 2 and revising the Original Pilot Rough Draft, Mr. Gentile sent Mr. Doyle a screenshot of an "outline", which consisted of nine bullet points and sentence fragments, on December 10, 2019.  The next day, Mr. Gentile sent a message saying, "Email me your draft before putting it on [WriterDuet]."

20.    Mr. Doyle finished his polish edits to the Original Pilot Rough Draft a few weeks later on December 28, 2019 ("Polished Pilot Rough Draft").  Every page of the Polished Pilot Rough Draft was clearly labeled, "Wyoming Script Draft DOYLE edits".

21.    Mr. Doyle sent the Polished Pilot Rough Draft to Mr. Gentile and said, "So I started all over again – from scratch today – with your pilot script.  Going really tediously through it – line by line – page by page, potential back story by potential back story . . . I've got a lot of questions. With fresh eyes.  And I think there are some problems in the existing pilot script you showed me . . . All of this though, in my view, is manageable, and the pilot script can be stronger as a result of it."  At the time, Mr. Doyle did not know the Original Pilot Rough Draft was actually written by Ms. Crededio.  Mr. Gentile agreed to arrange a call with himself, Mr. Doyle, and Mr. Crawford to discuss Mr. Doyle's plans for writing a new script, and the three men started a Whatsapp group chat.

22.    In early January 2020, Mr. Doyle began writing a "WY Timeline" and "WY Character Breakdowns and Plot Synopsis" using WriterDuet, an online writing software program.  As he worked, he sent updates by email and by Whatsapp to Mr. Gentile and Mr. Crawford, who often failed to respond.  During this time, Mr. Doyle worked on his personal laptop on Apple Pages, and requested that Mr. Gentile and Mr. Crawford email him if they had edits or comments on his work or if they had any work they would like him to incorporate into the draft.  Neither Mr. Gentile nor Mr. Crawford made any attempt to draft any portions of the script for Mr. Doyle to incorporate.

23.    As Mr. Doyle worked on the series, Mr. Doyle and Mr. Gentile communicated frequently.  The substance of these communications demonstrate that, as Mr. Doyle worked diligently to write scripts and supporting materials like character breakdowns, series trajectories, and plot synopses, Mr. Gentile simply asked for updates and provided high-level, non-substantive comments on Mr. Doyle's work.

24.     For example, in early February 2020 Mr. Gentile texted Mr. Doyle, "Any ideas for episode 2 which we spoke of?"  Mr. Doyle responded, "Yes of course.  [G]ot the whole thing mapped out, just need a free day without travel and teaching to sit down and just wrote [sic] it all out."  Mr. Gentile responded, "Fire when ready", indicating clearly his expectation that Mr. Doyle was to author Episode 2 whereas Mr. Gentile would merely review the work.

25.     Around the same time, Mr. Doyle informed Mr. Gentile he was working on the project, saying "I'm working in it now and all weekend, exclusively.  Doing the deep dive." And later saying, "I'm writing good stuff over here.  In the groove.  Gonna go all night and see how far I get.  Really feelin' this."  Mr. Gentile simply sent back three heart emojis and asked if Mr. Doyle was writing in WriterDuet.  Mr. Doyle responded the he would upload his work to WriterDuet the following day.  He then said "I write offline then upload to Duet in one shot. Sorry can't do original writing online via Duet."  When Mr. Doyle uploaded his character breakdown, plot synopses, and series trajectory work to Writer Duet, Mr. Gentile and Mr. Crawford had "view only" rather than "edit/admin" privileges to Mr. Doyle's work.  In other words, Mr. Gentile's and Mr. Crawford's limited access to WriterDuet combined with the fact that Mr. Doyle wrote on his personal laptop meant that neither Mr. Crawford nor Mr. Gentile had the ability to draft or revise the works without going through Mr. Doyle.

**B.  MR. DOYLE WRITES THE RECONCEPTUALIZED PILOT, EPISODE 2 AND THE FORMAT BIBLE.**

26.     On February 7, 2020, Mr. Doyle sent a detailed email outlining his plan to substantially rewrite the Polished Pilot Rough Draft, breaking down his approach scene-by-scene.  Mr. Gentile sent Mr. Doyle a Whatsapp message saying he agreed with Mr. Doyle's plan.  Mr. Doyle then rewrote the pilot from the ground up.

27.     Mr. Doyle wrote his version of the pilot (the "Reconceptualized Pilot") on his personal laptop using Apple Pages.  When he finished writing on February 14, 2020, Mr. Doyle sent via Whatsapp a PDF of the Reconceptualized Pilot to Mr. Gentile and Mr. Crawford.

28.     As of February 14, 2020, the Reconceptualized Pilot incorporated six new characters, a different plot, a different subject matter, a different storyline, different dialogue, and several completely original scenes.  The Reconceptualized Pilot drew on Mr. Doyle's extensive research into the Wyoming Territory and the women's suffrage movement, a concept that did not appear in the Original Pilot Rough Draft.  Mr. Doyle also wrote a "series trajectory" and "WY Scene Breakdown Ep. 01" to explain how his revisions fit into the broader series.

29.     To explain the work he did on the Reconceptualized Pilot, he created a PDF called "DOYLE comments" and sent it to Mr. Crawford and Mr. Gentile via Whatsapp on February 17, 2020.

30.     As Mr. Doyle continued working on and revising these drafts, Mr. Gentile and Mr. Crawford asked Mr. Doyle to "keep them in the loop", but did not contribute any writing of their own.  Instead, Mr. Crawford or Mr. Gentile provided high-level, non-substantive comments like "flush out that scene" to Mr. Doyle by Whatasapp.

31.     Mr. Doyle continued working on the Reconceptualized Pilot throughout March 2020.  Mr. Doyle sent a Whatsapp group message to Mr. Gentile and Mr. Crawford saying he was "deep in writing the pilot" and "would like to keep going and not come up for air until I'm done."  Mr. Doyle relayed the detailed, scene-by-scene edits he made to the group, and Mr. Crawford responded, "Wow sounds like a new script altogether."

32.     At Mr. Gentile's suggestion, Mr. Doyle sent the Reconceptualized Pilot to his screenwriting mentor, a member of the Writer's Guild of America ("WGA").  The title page of

the draft was clearly marked "Final Draft by Kevin Doyle (April 26, 2020)". Mr. Doyle also sent a copy to Mr. Gentile and Mr. Crawford the next day with the same title page, along with a "Pilot Update" explaining his changes to the Reconceptualized Pilot in detail. In the Pilot Update, Mr. Doyle announced he "wrote a new SCENE 06 - INT MADAME'S SALOON NIGHT" and reported on his extensive revisions involving every aspect of the Pilot.

33.     Mr. Crawford responded "love the work you've put in Kev!" and asked for a PDF so he could read it on his phone. Mr. Crawford did not provide any comments, edits, or revisions to the draft. Mr. Gentile's only comment was to add an "M" logo to the side of a building in the stage directions for a new and original scene Mr. Doyle authored. Neither Mr. Crawford nor Mr. Gentile raised any objection to the language "Final Draft by Kevin Doyle".

34.     On May 7, 2020, Mr. Crawford, Mr. Gentile and Mr. Doyle did a group read of Mr. Doyle's Reconceptualized Pilot via Whatsapp voice call. Two days later, Mr. Gentile texted Mr. Doyle he was "feeling very confident about the Pilot now" due to all of Mr. Doyle's work.

35.     Mr. Doyle's screenwriting mentor called Mr. Doyle on May 10, 2020 to give him notes on the Reconceptualized Pilot, and, at his request, advised him on how to structure and layout a format bible for the series.

36.     Over the next few months, Mr. Doyle incorporated his mentor's notes, continued writing and revising the Reconceptualized Pilot, continued writing his Episode 2, and wrote the entire format bible ("Format Bible") for the series.

37.     As Mr. Doyle completed his drafts of the Reconceptualized Pilot, Episode 2, and the Format Bible, he clearly labeled them as "written & completed by Kevin Doyle" or as "Copyright 2020 Kevin Doyle".

38.     Mr. Doyle sent the final Reconceptualized Pilot to Mr. Gentile on July 23, 2020. The title page read "Final draft written & completed by Kevin Doyle (June 2, 2020)."

39.     Two days later, Mr. Doyle sent Episode 2 to Mr. Gentile and Mr. Crawford.  The title page read, "Copyright 2020 Kevin Doyle."

40.     Mr. Doyle sent the Format Bible to Mr. Gentile and Mr. Crawford on August 16, 2020 and again on August 18, 2020.  On both occasions, the title page was clearly marked "Copyright 2020 Kevin Doyle."

41.     The Format Bible also included Mr. Doyle's draft of a final version of a credits page for the project—which included credits for the Original Pilot Rough Draft, the Final Pilot, Episode 2, and the Format Bible—based on WGA guidelines on how to properly attribute credits by a person's contribution to the work.  The credits page explained that the idea and original outline came from Mr. Gentile and Mr. Crawford, but the final draft for the Reconceptualized Pilot, Episode 2, and Format Bible were written by Mr. Doyle.

42.     Upon receiving the Reconceptualized Pilot, Episode 2, and the Format Bible, neither Mr. Gentile nor Mr. Crawford raised any objection to Mr. Doyle's assertion of his authorship and copyrights over the works.

43.     Mr. Doyle then registered with the WGA a two-page treatment entitled "The Equality State" or "The Big Equality", which described the original characters Mr. Doyle had created and his plot ideas surrounding the women's suffrage movement.

**C.  MR. DOYLE LEARNS MR. GENTILE AND MR. CRAWFORD PLAN TO TAKE CREDIT FOR HIS WORK.**

44.     On September 19, 2020, Mr. Gentile sent Mr. Doyle a Whatsapp message asking Mr. Doyle to change the title page on the pilot to:

27

The Monarch

Based on real history

Created by Chris Gentile

45.     Mr. Gentile then sent a message to Mr. Doyle saying, "Title page is not staying

that chock full . . . It's too redundant and too much ego.  I'm thinking:

Created by Chris Gentile

Written by Juan Antonio Crawford, Kevin Doyle, and Chris Gentile.

No other breakdowns needed."

46.     Confused by Mr. Gentile's text, Mr. Doyle responded on September 20, 2020,

"Hey man, was just going by what is advised to do by the WGA.  They suggest listing everything

to track the work that is done on a script.  Protects everyone involved."  Mr. Doyle also sent the

link to the WGA's manual on cover pages and additional resources to Mr. Gentile on how to

draft cover pages to ensure that all who meaningfully contribute to a work are credited

appropriately.

47.     Mr. Gentile responded, "I'll have to look at that . . . Draft/revision credit is

misleading because all 3 gave input."

48.     Mr. Gentile's apparent intent to misrepresent the parties' respective roles in

drafting the script alerted Mr. Doyle to the need to protect his work.  On September 21, 2020,

Mr. Doyle registered Episode 2 and the Format Bible with the U.S. Copyright Office, which bear

Registration Number PAu004054496.  After registering the Format Bible and Episode 2, Mr.

Doyle responded to Mr. Gentile's text on September 22, 2020 saying, "In what ways?

Specifically? Is it misleading?  Feedback, notes, and conversation is not writing? Did I miss

something?  Were there finished drafts and revisions and rewrites coming to me [to] review and

28

read?  No.  Because I was writing.  So please tell me specifically, what is misleading about a title page you approved two months ago."  Mr. Gentile responded "We'll talk about this tomorrow."

49.    Mr. Doyle sent Mr. Gentile the WGA TV Manual, Section 3, "Guild Policy on Credits" and explained this is the resource he used to create the cover page.  Mr. Doyle said, "if you want, you can even add a 'Story by' clause/credit, which protects you (and Juan)."  Mr. Gentile did not respond.

50.    A few weeks later, Mr. Doyle saw that a production company—Zero Gravity Management—was looking for new talent and new projects.  Mr. Doyle contacted the company to pitch himself as a writer.  Zero Gravity Management asked him to send a writing sample and further asked that Mr. Doyle send a release form executed by any parties who collaborated on the project.

51.    Planning to submit the Pilot as a writing sample, Mr. Doyle called Mr. Gentile and asked him to sign the release form on October 2, 2020.  Mr. Gentile immediately began acting hostile and verbally abusive.  Mr. Gentile refused to sign the release form and falsely represented that he had written aspects of the Reconceptualized Pilot.  Mr. Gentile suggested that Mr. Doyle was acting like the writer that he and Mr. Crawford had worked with to develop the Original Pilot Rough Draft. Mr. Doyle asked Mr. Gentile whether the former writer had retained any rights in the script, to which Mr. Gentile responded with an affirmative "no."

52.    In light of Mr. Gentile's reaction, Mr. Doyle decided not to submit his Reconceptualized Pilot as a writing sample to Zero Gravity Management and submitted a different work instead.  Mr. Doyle informed Mr. Gentile of this decision by text message.

53.    The following day October 3-4, 2020, Mr. Doyle found Cassi Crededio's name on an old script draft file in WriterDuet and realized that Mr. Crawford and Mr. Gentile deleted her

name from subsequent drafts in order to hide the fact that she, and not they, had authored the Original Pilot Rough Draft.

54.     Mr. Doyle then contacted Ms. Crededio, who confirmed that she, not Mr. Gentile or Mr. Crawford, wrote the Original Pilot Rough Draft.  She also informed him that she registered a copyright bearing registration number PAu004003038 on November 15, 2019 for her work on the Original Pilot Rough Draft.

55.     On learning of Counterclaim Defendants' infringement of Ms. Crededio's work and registered copyright, Mr. Doyle wrote the WGA to inform them that Mr. Gentile and Mr. Crawford had been infringing Ms. Crededio's copyright.

56.     Mr. Doyle also asked Ms. Crededio for permission, which she granted, to register the Reconceptualized Pilot script with the U.S. Copyright Office as a derivative work.  Mr. Doyle registered the Reconceptualized Pilot, which bears the copyright registration number PAu004052332 on October 9, 2020.

57.     Mr. Doyle also registered his original Timeline, Plot Synopsis and Character Breakdowns on October 16, 2021, which bear Registration Number PAu004110648.

58.     On October 17, 2020, Mr. Doyle informed Mr. Crawford and Mr. Gentile via email that he had registered his works with the U.S. Copyright Office and that they were not authorized to use these works without his permission.

59.     From the time Mr. Doyle took on the project to the time he registered his copyright, Mr. Doyle sent Mr. Gentile and Mr. Crawford at least 34 drafts of his works.  Each of these works were "fixed in a tangible medium" and therefore Mr. Doyle had protection for each of them well before he registered his copyrights with the U.S. Copyright Office.  Of the 34 drafts he sent, 19 were clearly labeled as final drafts by Mr. Doyle or "Copyright 2020 Kevin Doyle".

By contrast, neither Mr. Gentile nor Mr. Crawford sent a single draft of their own original work to Mr. Doyle.

**D. COUNTERCLAIM DEFENDANTS SEND MR. DOYLE AND MS. CREDEDIO A CEASE AND DESIST AND MR. DOYLE LEARNS OF DEFENDANTS' INFRINGEMENT.**

60.    On October 20, 2020, Mr. Doyle received a cease and desist letter from counsel for Mr. Crawford and Mr. Gentile, addressed and mailed to Mr. Doyle in Denmark.  This letter accused Mr. Doyle of infringing on Mr. Crawford and Mr. Gentile's rights associated with "Untitled Wyoming Project" aka "The Monarch".  At the time, Mr. Crawford and Mr. Gentile did not have any works registered with the U.S. Copyright Office.

61.    Mr. Gentile and Mr. Crawford did not register any copyrights with the U.S. Copyright office until November 27, 2020, approximately one month after they sent their October 20, 2020 cease and desist letter, two months after Mr. Doyle registered his copyrights and one year after Ms. Crededio registered her copyrights.

62.    In January and February 2021, Mr. Doyle learned of Mr. Gentile's and Mr. Crawford's fraudulent registration.  He also learned that Mr. Crawford had been falsely representing himself as the "writer" and "producer" of the project.

63.    Mr. Doyle sent Counterclaim Defendants a cease and desist letter on March 5, 2021, wherein Mr. Doyle demanded that Mr. Crawford and Mr. Gentile:  (1) halt all efforts to pitch, sell, license, or otherwise use Mr. Doyle's intellectual property and remove the "Untitled Wyoming Project" from all websites, pitchbooks, or any other public materials; (2) file a request to cancel their registration of PAu004057984 to the extent it purports to cover Mr. Doyle's Reconceptualized Pilot, Episode 2, or Format Bible; (3) provide Mr. Doyle with the name and contact information of any individual, company, agent, or other recipient to whom they have

pitched, purported to license, distributed, or otherwise shared any part of Mr. Doyle's works and an accounting of any proceeds promised or received therefrom; and (4) a signed affirmation that neither Mr. Crawford nor Mr. Gentile will use, copy, reproduce, transmit, or otherwise distribute Mr. Doyle's registered works.  Mr. Crawford and Mr. Gentile failed to meaningfully comply with this request.

64.    Counsel for Mr. Crawford and Mr. Gentile sent counsel for Mr. Doyle a "current operative version of the script" on August 12, 2021.  On information and belief, this script (the "Infringing Script") is the version Mr. Crawford and Mr. Gentile registered with the U.S. Copyright Office.

65.    A comparison of the scripts shows that Mr. Gentile and Mr. Crawford directly copied Mr. Doyle's work almost entirely, making minimal changes.

66.    Among others, the following scenes and passages from the Infringing Script were directly copied from Mr. Doyle's Reconceptualized Pilot:

a.  Mr. Doyle's Opening Credits Montage;

b.  Mr. Doyle's Scene 5;

c.  Large sections of the stage direction and dialogue from Mr. Doyle's Scene 7;

d.  Mr. Doyle's Scene 8;

e.  Large sections of the stage direction and dialogue from Mr. Doyle's Scene 26;

f.  Portions of the stage directions and large sections of dialogue from Mr. Doyle's Scene 27;

g.  Mr. Doyle's Scene 33;

h.  Mr. Doyle's Scene 37.

67.    By registering a version of the script that directly copies Mr. Doyle's original work after Mr. Doyle informed them they did not have authorization to use or distribute his work, Mr. Gentile and Mr. Crawford willfully infringed Mr. Doyle's copyrights bearing registration numbers PAu004052332,  PAu004054496, and PAu004110648.

68.    On information and belief, Mr. Crawford and Mr. Gentile have distributed, and continue to distribute, the Infringing Script to talent and production agencies without Mr. Doyle's consent.  By distributing the Infringing Script after Mr. Doyle informed them they did not have authorization to use or distribute his work, Mr. Gentile and Mr. Crawford willfully infringed Mr. Doyle's copyrights bearing registration numbers PAu004052332,  PAu004054496, and PAu004110648.

## COUNT ONE
### (Declaratory Judgment)

69.    Mr. Doyle repeats and realleges paragraphs 1-68 above as if set forth fully herein.

70.    An actual, ripe, and justiciable controversy among the parties regarding their respective ownership and authorship rights concerning the various copyrights associated with Wonderland: The Equality State or the Untitled Wyoming Project.

71.    Mr. Doyle is entitled to a declaration that his copyrights bearing registration numbers ") bearing registration numbers PAu004052332, PAu004054496, and PAu004110648 are valid.

72.    Mr. Doyle is also entitled to a declaration that Mr. Gentile and Mr. Crawford's copyright PAu004057984 is invalid.

## COUNT TWO
### (Willful Copyright Infringement)

73.    Mr. Doyle repeats and realleges paragraphs 1–68 above as if set forth fully herein.

74.    Mr. Doyle is the owner of valid copyrights bearing registration numbers PAu004052332, PAu004054496, and PAu004110648.

75.    By registering copyright bearing registration number PAu004057984, Mr. Gentile and Mr. Crawford willfully infringed Mr. Doyle's copyright.

76.    On information and belief, Mr. Crawford and Mr. Gentile have distributed, and continue to distribute, the Infringing Script to talent and production agencies without Mr. Doyle's consent.  By distributing the Infringing Script after Mr. Doyle informed them they did not have authorization to use or distribute his work, Mr. Gentile and Mr. Crawford willfully infringed Mr. Doyle's copyright.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Doyle respectfully requests the following relief:

A.  A judgment declaring (a) that the copyright registrations bearing registration numbers PAu004052332, PAu004054496, and PAu004116048 held by Mr. Doyle are valid; and (b) the copyright registration bearing registration number PAu004057984 held by Counterclaim Defendants is invalid;

B.  An injunction under 17 U.S.C. § 503 preventing and/or restraining Counterclaim Defendants from further infringing Mr. Doyle's copyrights bearing registration numbers PAu004052332, PAu004054496, and PAu004116048;

C.   Actual damages, profits, and/or statutory damages under 17 U.S.C. § 504;

D.  Other such relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Defendant Kevin Doyle hereby demands a trial by jury in this action of all issues so triable.

Dated:  August 18, 2022

New York, New York

CRAVATH, SWAINE & MOORE LLP

by

_/s/ Hannah Dwyer_
Michael A. Paskin
Mpaskin@cravath.com
Hannah L. Dwyer
hdwyer@cravath.com

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

_Attorneys for Defendant and_
_Counterclaim-Plaintiff Kevin Doyle_