UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

CHRISTOPHER GENTILE and JUAN A.
CRAWFORD,

        Plaintiffs,

    -v-                                No.  1:21-cv-08528-LTS

CASSI CREDEDIO and KEVIN DOYLE,

        Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Plaintiffs Christopher Gentile ("Mr. Gentile" or "Gentile") and Juan A. Crawford ("Mr. Crawford" or "Crawford") (together, "Plaintiffs") bring this action against Defendants Cassi Crededio ("Ms. Crededio" or "Crededio") and Kevin Doyle ("Mr. Doyle" or "Doyle"), alleging that Defendants applied for, and received, copyright registrations of a draft screenplay without seeking authorization from Plaintiffs.  Plaintiffs allege that they are the sole owners and authors of the draft screenplay at issue and assert claims for declaratory relief and copyright infringement.  (See docket entry no. 46 ("First Amended Complaint" or "FAC").[1])  Before the Court is Defendant Crededio's motion to dismiss the FAC for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docket entry no. 37.)  The Court has jurisdiction of the dispute pursuant to 28 U.S.C. sections 1331 and 1338(a).

---

[1]     The unredacted version of the First Amended Complaint was filed at docket entry no. 46 pursuant to the Court's March 16, 2023 Order (docket entry no. 45) denying Plaintiffs' motion to seal.  The First Amended Complaint was originally filed at docket entry no. 32 in redacted form.

The Court has reviewed carefully the submissions in connection with the instant motion.  For the following reasons, Defendant Crededio's motion to dismiss the First Amended Complaint is granted in its entirety.

BACKGROUND

The following facts, drawn from the First Amended Complaint, are taken as true for the purposes of the instant motion practice.  This case concerns ownership of a draft version of a screenplay entitled "Untitled Wyoming Project" or "The Monarch" (the "Work" or the "Untitled Wyoming Project").  Plaintiff Gentile first conceived of the idea for the Work approximately fifteen years ago, inspired by the idea of a show "focused around a flawed female heroine."  (FAC ¶¶ 17-18.)  After learning that Wyoming was the "first state or territory in the nation to grant suffrage to women, in 1869[,]" Mr. Gentile decided to create a show based upon the women's suffrage movement, led by a "madam[]" in the Wyoming area, who "ran a brothel" and also "championed women's rights."  (Id. ¶¶ 18-19.)  Mr. Gentile shared this idea with his long-time friend and colleague, Mr. Crawford, and together, they "conducted extensive research" into the relevant historical period.  (Id. ¶ 20.)  Plaintiffs then worked together to draft "the early versions of" a television series "focused on the role that madams of brothers in [the] American West played in bring[ing] suffrage rights to women."  (Id. ¶ 20.)  Mr. Crawford submitted a short draft of "the first few scenes of the Work" to the Writers Guild of America (the "WGA").  (Id. ¶ 21; see also id. ¶ 42 (describing the version submitted to the WGA as the "first pages of the Work").)

Plaintiff Crawford met Defendant Crededio on a set for a different project in which Plaintiff Crawford had an acting role and mentioned that "he and Mr. Gentile could consider hiring [her]" to "assist with work on the Untitled Wyoming Project."  (FAC ¶¶ 22, 24.)

Ms. Crededio was subsequently hired and entered into a Confidentiality Agreement with Mr. Gentile on October 22, 2019, agreeing to "treat all Confidential Information" including "materials relating to Untitled Wyoming Project" with "the strictest confidence." (Id. ¶ 25.) Ms. Crededio collaborated with Plaintiffs over about a three-week span, from October 14, 2019, to November 2, 2019, during which time she "helped draft the Work's first three acts." (Id. ¶¶ 26-27; see also id. ¶ 39 (alleging Ms. Crededio "assisted with drafting the first version of the Work").)

Plaintiffs allege that they provided Ms. Crededio with "detailed verbal instructions and/or physical outlines as well as rough drafts . . . demonstrating Plaintiffs' conception of the Work[]." (FAC ¶ 27.) Ms. Crededio was given "firm deadlines" for completion of "her drafts of each act" and was "paid a sum of $500 for each act she drafted" by the requisite deadline. (Id. ¶¶ 28-30.) Plaintiffs allege that Ms. Crededio "used a screenwriting software and a platform called 'WritersDuet'" to draft the three acts of the screenplay, which permits writers to "co-write in real time." (Id. ¶ 37.) The program gave Plaintiffs "access to the Untitled Wyoming script" where they "could see and comment on any changes Ms. Crededio made to any individual scene" and either "approve[] Ms. Crededio's words, suggest[] ways that they could be re-written, or simply re-wr[i]te them themselves to ensure that what Ms. Crededio was writing" conformed "with their directions." (Id.) Plaintiffs allege that they "authored[,]" "were responsible for[,]" and "dictated" aspects of the individual scenes within the first three acts of the play, including characters, the settings, and "the action, description[,] and dialog" of the scenes. (Id. ¶¶ 47-65.) Ms. Crededio's role, they allege, was "primarily to reduce to writing Plaintiffs' detailed instructions." (Id. ¶ 66.) To the extent Ms. Crededio made any independent contributions to the Work, Plaintiffs allege that they were made "on a work-for-hire basis"

within the scope of her employment.  (Id. ¶¶ 74-79.)  Plaintiffs allege that the Work has

undergone further revision since Ms. Crededio's three-week term ended, and was unfinished as

of the time the First Amended Complaint was filed.  (Id. ¶ 39.)

    After completing the draft of the first three acts of the screenplay, Ms. Crededio

"submitted an application to register" the Work with the U.S. Copyright Office on November 15,

2019, which was ultimately granted.  (FAC ¶ 6.)  Plaintiffs assert that this registration was

"unauthorized" and therefore "invalid" because Plaintiffs are "the exclusive authors of the

Work" who "never relinquished control over" its "direction, scope and words."  (Id. ¶¶ 2-7.)

Plaintiffs sent Ms. Crededio a cease-and-desist letter on November 25, 2020, asserting that her

copyright registration "was made under false pretenses as she was not the author of 'Untitled

Wyoming Project.'"  (Id. ¶ 136.)  Two days later, "Plaintiffs applied for their own copyright

registration[,]" and the U.S. Copyright Office granted such copyright in January 2021 for the

"dramatic work and music 'Untitled Wyoming Project' a.k.a. Monarch."  (Id. ¶¶ 132-33.)

    In this action, Plaintiffs seek declarations "that the copyright registration[] held

by Ms. Crededio" is "invalid[,]" that "their copyright registration is valid[,]" and that "Plaintiffs

are . . . the exclusive owners and authors of the Work."  (FAC ¶¶ 140-44.)  Plaintiffs also assert a

claim for copyright infringement, alleging that they are the "owners of a valid copyright" in the

Untitled Wyoming Project and that Ms. Crededio not only unlawfully "copied Plaintiffs' original

expression from the copyrighted work when she submitted her application for a copyright to the

U.S. Copyright Office" but also that her "continued refusal to cancel" her copyright registration

"infringes on Plaintiffs' exclusive rights."  (Id. ¶¶ 145-49.)

    In anticipation of the filing of the Amended Complaint, on July 1, 2022, Judge

Broderick, to whom this case was previously assigned, dismissed Defendant Crededio's motion

to dismiss the original pleading as moot.  (Docket entry no. 28.)  In that order, Judge Broderick expressed his "concerns about whether Plaintiffs [had] adequately plead[ed] their authorship of the Work" because the "allegations seem[ed] to plead only that [Plaintiffs] provided Crededio with 'ideas,' rather than that they provided any particular 'manner[s] of expression' that became part of the Work."  (Id. at 4 (citation omitted).)  Judge Broderick acknowledged that Plaintiffs failed to "plead any 'written instrument' through which they and Crededio agreed that the Work 'shall be considered a work made for hire[,]'" but rather the "Complaint appear[ed] to portray Crededio as an 'independent contractor when [s]he produced the' Work."  (Id. at 4-5 (citations omitted).)  In directing Plaintiffs to file an amended complaint by July 28, 2022, Judge Broderick instructed that the revised pleading "should include . . . some or all of the following: (1) a copy of the Work; (2) copies of the 'physical outlines,' 'rough drafts,' or other work product 'provided by the Plaintiffs' to Crededio demonstrating Plaintiffs' alleged authorship of the Work . . . [;] (3) allegations about which specific parts of the Work they believed they authored; and (4) if it exists, any written employment agreement Plaintiffs entered into with Crededio[,]" in order to meet their "burden to plead sufficient 'factual content'" to render their claims plausible.  (Id. at 5-6 (citations omitted).)  In the First Amended Complaint, Plaintiffs allege the portions of the scenes they claim to have "authored," been "responsible for," and "dictated."  (FAC ¶¶ 43-65.) Plaintiffs also attached as Exhibit A to the First Amended Complaint "the version of the script as it existed when they ceased to employ Ms. Crededio on or about November 2, 2019."  (Id. ¶ 40.)  Plaintiffs allege that the version Ms. Crededio "submitted for copyright protection" is "either identical to Exhibit A or is derivative thereof."  (Id.)

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  A complaint cannot simply recite legal conclusions or bare elements of a cause of action; it must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Under the Rule 12(b)(6) standard, the court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

Count One: Declaratory Judgment[2]

Plaintiffs assert a claim pursuant to the Declaratory Judgment Act, seeking declarations "that the copyright registration[] held by Ms. Crededio" is "invalid[,]" that "their copyright registration is valid," and because "Plaintiffs are . . . the exclusive owners and authors of the Work."  (FAC ¶¶ 140-44.)  Ms. Crededio moves to dismiss Plaintiffs' claim for declaratory relief, arguing that Plaintiffs have failed to plausibly allege that they were authors of the Work or that the Work constituted a work-made-for-hire.

The crux of this issue is a dispute over authorship of the version of the screenplay that Ms. Crededio assisted in drafting and thereafter registered for copyright protection.  "The Copyright Act of 1976 provides that copyright ownership 'vests initially in the author or authors of the work.'"  Sorenson v. Wolfson, 96 F. Supp. 3d 347, 362 (S.D.N.Y. 2015) (quoting 17 U.S.C. § 201(a)).  "Long-established precedent designates 'the author' as the person who 'actually creates the work—that is, the person who translates an idea into a fixed, tangible

---

[2]    Plaintiffs assert Count One for "declaratory judgment pursuant to 28 U.S.C. §§ 2201 re Rights of 'Untitled Wyoming Project.'"  (FAC ¶¶ 140-44.)  Declaratory judgment is a type of relief Plaintiffs may seek, not an independent cause of action.  For this reason, the Court analyzes this cause of action as a claim seeking declaratory relief in the context of alleged copyright infringement.

expression,' making the work copyrightable." Horror Inc. v. Miller, 15 F.4th 232, 242 (2d Cir.

2021) (quoting Community for Creative Non-Violence v. Reid, 490 U.S. 730, 737 (1989)).

"[B]oth tangibility and originality are necessary aspects of authorship." Medforms, Inc. v.

Healthcare Mgmt. Sols., Inc., 290 F.3d 98, 107 (2d Cir. 2002); see also 16 Casa Duse, LLC v.

Merkin, 791 F.3d 247, 256 (2d Cir. 2015) ("Copyright protection subsists . . . in original works

of authorship fixed in any tangible medium of expression." (quoting 17 U.S.C. § 102(a))).

"Ideas, refinements, and suggestions, standing alone, are not the subjects of copyrights."

Maurizio v. Goldsmith, 84 F. Supp. 2d 455, 466 (S.D.N.Y. 2000) (internal quotation marks and

citation omitted); see also Medforms, 290 F.3d at 107 ("Copyright protection does not, however,

extend to an idea just because it is original.").  Moreover, to reflect an original contribution, the

work must have been "independently created by the author and . . . possess at least a minimal

degree of creativity." Maurizio, 84 F. Supp. at 466-67.  The "requisite level of creativity is

extremely low" and, therefore, "[t]he vast majority of works make the grade quite easily, as they

possess some creative spark, no matter how crude[,] humble[,] or obvious it might be."

Maxwood Music Ltd. v. Malakian, 713 F. Supp. 2d 327, 343 (S.D.N.Y. 2010) (internal quotation

marks and citations omitted).

   Plaintiffs argue that they have plausibly alleged exclusive authorship of the Work

because the allegations, if accepted as true, demonstrate that Defendant Crededio did not

contribute any original components to the draft script.  Plaintiffs allege that they "conceived of

the idea for the Work, conducted significant research into developing their idea, and committed

their early conceptions to writing in the form of outlines[,]" including the initial few-page draft

submitted to the WGA.  (Docket entry no. 43 ("Pl. Opp.") at 6-7 (citing FAC ¶¶ 19-21, 42).)

Plaintiffs further allege that they "dictated the details of scenes, characters, plot points and

dialog" to Ms. Crededio for the screenplay and "retained absolutely (sic) control over what remained in the script."  (Id. (citing FAC ¶¶ 28, 75).)  Therefore, the First Amended Complaint, Plaintiffs argue, plausibly demonstrates that Ms. Crededio failed to contribute any portion of the work that resulted from her "independent creation."  (Id.)

> The Court concludes that Plaintiffs have failed to plead sufficient facts to render their Declaratory Judgment Act claim—seeking a declaration of exclusive authorship over the Work—plausible.  Plaintiffs allege that they conceived of the idea for the Work, namely a "period drama set in the late 1800's American West" focused on the women's rights movement (FAC ¶ 19), and conducted extensive research to develop the conceptual framework for the television series, but ideas are not eligible for copyright protection absent "fix[ation] in a tangible medium of expression."  Medforms, 290 F.3d at 107; see also Sorenson, 96 F. Supp. 3d at 362 (dismissing copyright claim where plaintiff "did not translate any idea into a fixed, tangible expression").  Plaintiffs allege, in a conclusory manner, that they drafted the "first few scenes" of the Work in a short draft submitted to the WGA (FAC ¶ 21) and also translated their ideas to "written outlines, and rough drafts" (id. ¶ 5), but they fail to identify with any factual specificity the elements of the screenplay that appeared in these preliminary versions and were allegedly incorporated into the later version of the Work at issue here, which Plaintiffs claim to have authored.  (See docket entry no. 38 ("Def. Mem.") at 5 (explaining that the "work at issue" here is "the version of the script as it existed . . . on or about November 2, 2019" (citing FAC ¶ 40).)  Nor have Plaintiffs submitted, with their revised pleading, copies of the preliminary versions of the Work that they allegedly drafted to enable the Court to compare the early drafts with the work product that Ms. Crededio assisted in drafting.  (See docket entry no. 28 (July 1,

2022 Order); cf. FAC (only attaching the versions of the Work with which Defendants were

involved, and not any preliminary outlines or drafts).)

           In lieu of submitting the preliminary versions of the Work that Plaintiffs allegedly

wrote, Plaintiffs instead break down the three acts scene-by-scene in the FAC in an attempt to

describe the elements Plaintiffs claim to have "authored."  (FAC ¶¶ 47-65.)  This section of the

FAC is replete with legal conclusions that the Court need not accept as true.  See, e.g., Klauber

Brothers, Inc. v. URBN US Retail LLC, No. 21-CV-4526-GHW, 2023 WL 1818472 (S.D.N.Y.

Feb. 8, 2023) ("'[T]he tenet that a court must accept as true' a complaint's factual allegations

does not apply 'to legal conclusions.'" (quoting Iqbal, 556 U.S. at 678)).  For example, Plaintiffs

repeatedly allege that they "authored" characters that appear in the Work, as well as the "overall

direction" and "action[s], description[s,] and dialog[s]" in given scenes, even though authorship

is the legal issue at stake in this case.  (Id. ¶¶ 47, 49, 61.)  Plaintiffs' allegations as to the portions

of the Work they were "responsible for" are vague and devoid of factual detail about the scope of

their responsibility and how that responsibility relates to the language used in the actual written

work.  (See, e.g., id. ¶¶ 53-56 (alleging that Plaintiffs "dictated" elements including "the overall

setting" and the "descriptions, actions, dialog and motivations of [certain] characters" throughout

certain scenes).)  The Court's review of the draft script attached as Exhibit A to the First

Amended Complaint reveals that many of the elements Plaintiffs claim to have "authored" or

"dictated" amounted to broad conceptions or ideas for the Work that are not copyrightable and

required substantial expansion to transform into a viable screenplay.  In Act I, scene 1, for

instance, Plaintiffs refer to their authorship of the characters and the "overall direction" of the

scene, including the "acceptance of a package" that allegedly formed a "central plot point to the

pilot script."  (Id. ¶ 47.)  The Court's review of this scene in the Work, however, reveals that the

written script contains much more detail, describing, for example, the "dirt soaked into" a
character's skin "as we see his breathing starting to race" and how the character was "matching
the gallops of the horses pulling the stagecoach spotted in the distance, timing his attack like a
lion does to the prey." (Id., Ex. A.)  In another example from Act I, scene 2, Plaintiffs allege to
have "created" one of the characters – Mining Man I – that appears in the scene (id. ¶ 48), but
several other miners also appear in the underlying Work, including "[m]any grunting MINERS"
"tired on their knees [who] continue to work in soot soaked suits" and one "MINER" in
particular who "walks out of the darkened mine chambers and wipes coal dust off his face" (id.,
Ex. A).

        Plaintiffs attempt to portray Ms. Crededio's role as that of a "scribe" who "merely
transformed instructions dictated by Plaintiffs into writing" (FAC ¶ 45) and added no original
contributions to the Work.  Plaintiffs rely on the Second Circuit's decision in Medforms, Inc. v.
Healthcare Mgmt. Sols., Inc., 290 F.3d 98 (2d Cir. 2002), which explained that, although an
author of a work is usually "the person who translates an idea into a fixed, tangible
expression[,]" authorship may, in limited circumstances, also extend to the individual who
"authorize[s] another to 'fix' his original idea."  290 F.3d at 107 (citations omitted).  The Second
Circuit cited approvingly the decision in Andrien v. S. Ocean County Chamber of Commerce,
927 F.3d 132, 135 (3d Cir. 1991), where the Third Circuit concluded that, "[w]hen one
authorizes embodiment" of an idea, they may claim ownership of the work where the
embodiment process involved "rote or mechanical transcription that [did] not require intellectual
modification or highly technical enhancement."  Id. (quoting Andrien, 927 F.3d at 135).

        When accepted as true and construed in the light most favorable to the Plaintiffs,
however, Plaintiffs' allegations show that Ms. Crededio was the individual who fleshed out

Plaintiffs' conceptual frameworks for the screenplay and committed them to the page, making the Work copyrightable.  See, e.g., New York Mercantile Exchange, Inc. v. Intercontinental Exchange, Inc., 497 F.3d 109, 116 (2d Cir. 2007) (explaining that "ideas are too important to the advancement of knowledge to permit them to be under private ownership" and therefore "ideas cannot be copyrighted" and "only the manner of [an idea's] expression is copyrightable" (internal quotation marks and citations omitted)).  Plaintiffs allege that Ms. Crededio "assist[ed] in turning Plaintiffs' written work into a product that would be ready to be sold as a screenplay" (FAC ¶ 44); that Ms. Crededio drafted the screenplay on a platform called "WritersDuet[;]" and that Plaintiffs accessed the screenplay on WritersDuet to "approve[] [her] words, suggest[] ways that they could be re-written, or simply re-wrote them themselves to ensure that what Ms. Crededio was writing in conformity with their directions" (id. ¶ 37; see also ¶ 79 (explaining that the platform "allows multiple authors and collaborators to work together on the same project")).  Once Ms. Crededio completed her drafts, Plaintiffs allege that they were involved in the editing process, noting, for example, when "[g]rammar [had] to be cleaned up" and where the "story need (sic) to tie together along with more dialogue and direction changes."  (Id. ¶ 68.)  These allegations, even construed in the light most favorable to Plaintiffs, indicate that Ms. Crededio played a significant role in transforming Plaintiffs' ideas into the written, tangible screenplay and exercised some degree of freedom throughout the drafting process, as she was the one who drafted the sections of the script for Plaintiffs' review and also worked to complete her drafts by the deadlines Plaintiffs provided.  The allegations of the FAC are not sufficient to support an inference that Plaintiffs were the sole authors of the Work.

The Court "need not feel constrained to accept as truth conflicting pleadings that make no sense . . . or that are contradicted either by statements in the complaint itself or by

documents upon which [the] pleadings rely." Sander v. Enerco Grp., Inc., No. 21-CV-10684-VB, 2023 WL 1779691, at *4 (S.D.N.Y. Feb. 6, 2023) (quoting Brown v. City Univ. of N.Y., No. 21-CV-854-PKC-MMH, 2022 WL 467818, at *5 (E.D.N.Y. Sept. 30, 2022)); see also Hirsch v. Arthur Anderson & Co., 72 F.3d 1085, 1095 (2d Cir. 1995) (affirming dismissal of Complaint where "attenuated allegations" were "contradicted both by more specific allegations in the Complaint and by facts of which [the court] may take judicial notice"). Here, Plaintiffs' allegations as to their sole authorship of the Work are conclusory, vague, and contradicted by their more specific allegations as to Ms. Crededio's role in the drafting process, and by the Work itself. The plethora of additional creative elements in the Work, as compared to the vague concepts Plaintiffs allege to have authored, render implausible their contention that Ms. Crededio made no original contributions to the Work. See, e.g., Cnty. of Suffolk, New York v. First Am. Real Estate Sols., 261 F.3d 179, 188 ("The level of creativity required to demonstrate that the work is original is extremely low; even a slight amount will suffice." (internal quotation marks and citation omitted)). Therefore, upon review of the entirety of the pleading, the Court concludes that Plaintiffs' allegations are insufficient to render plausible Plaintiffs' claim as to exclusive authorship of the Work.

Plaintiffs allege in the alternative that, to the extent Ms. Crededio contributed original portions to the Work, her contributions amounted to a work-made-for-hire and, therefore, Plaintiffs retain the authorship rights in the Work. Even though the author of a work is usually the person who "actually creates the work—that is the person who translates an idea into a fixed, tangible expression," the Copyright Act "creates an exception to the general authorship rule regarding 'works made for hire.'" Horror Inc., 15 F.4th at 242 (internal quotation marks and citations omitted). Section 101 of the Copyright Act specifies that a work is "for hire" under

"two sets of circumstances: '(1) a work prepared by an employee within the scope of his or her employment; or (2) a work specially ordered or commissioned . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.'" Reid, 490 U.S. at 738 (quoting 17 U.S.C. § 101).  Here, only the first prong is even potentially applicable because Plaintiffs do not allege that Ms. Crededio signed a written instrument designating the draft script a work-made-for-hire.  (See FAC ¶¶ 74-79).

        The Supreme Court, in Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989), set forth the framework for determining whether a "hired party is an employee" for the purposes of copyright ownership.  490 U.S. at 751-52.  If the party "qualifies as an employee 'under the general common law of agency,' and the work is prepared within the scope of his employment, then the work that [the party] prepares for [her] employer is a work for hire" and authorship vests in the employer.  Horror, Inc., 15 F.4th at 244 (quoting Reid, 490 U.S. at 738, 740, 751).  "If, however, the individual is merely an independent contractor 'as understood by common-law agency doctrine,' then the work will not qualify as a work for hire" and the non-employee will be considered the author of the Work.  Id. (quoting Reid, 490 U.S. at 738, 740).  The Reid court identified thirteen non-exclusive factors to be considered in determining whether the hired party is an employee, including: (1) "the hiring party's right to control the manner and means by which the product is accomplished[,]" (2) "the skill required[,]" (3) the source of the instrumentalities and tools[,]" (4) the location of the work[,]" (5) "the duration of the relationship between the parties[,]" (6) "whether the hiring party has the right to assign additional projects to the hired party[,]" (7) "the extent of the hired party's discretion over when and how long to work[,]" (8) "the method of payment[,]" (9) "the hired party's role in hiring and paying assistants[,]" (10) "whether the work is part of the regular business of the hiring party[,]" (11)

"whether the hiring party is in business[,]" (12) the "provision of employee benefits[,]" and (13) "the tax treatment of the hired party."  Reid, 490 U.S. at 751-52.  The Second Circuit has "cautioned against applying the Reid factors 'in a mechanistic fashion[,]'" Horror Inc., 15 F.4th at 248 (quoting Aymes v. Boonelli, 980 F.2d 857, 862 (2d Cir. 1992)), as the "Reid test can be easily misapplied, since it consists merely of a list of possible considerations that may or may not be relevant in a given case." Aymes, 980 F.2d at 861.  Instead, the Court should weigh the factors based on their applicability and significance to the case.  Id.  The Second Circuit has also explained that the factors "that will be significant in virtually every situation" and "should be given more weight in the analysis" include "(1) the hiring party's right to control the manner and means of creation; (2) the skill required; (3) the provision of employee benefits; (4) the tax treatment of the hired party; and (5) whether the hiring party has the right to assign additional projects to the hired party."  Id. at 861.

Based on its review of the allegations in the FAC in light of the Reid factors, the Court concludes that the facts Plaintiffs proffer in the FAC, even when construed in the light most favorable to them, are insufficient to support an inference that the Work was a work-made-for-hire because Ms. Crededio was Plaintiffs' employee.  Plaintiffs allege that Defendant Crededio only worked with Plaintiffs for a three-week period on one project—the Untitled Wyoming Project—and was paid a lump sum payment upon her completion of each act of the script—rather than a fixed weekly or monthly salary.  See, e.g., Reid, 490 U.S. at 752-53 (finding two-month work period to weigh in favor of independent contractor status); Horror, Inc., 15 F.4th at 255 (classifying defendant as independent contractor where he worked on screenplay "for approximately two months" and was paid lump sum payments upon his completion of the first and final drafts of the screenplay); cf. Mwangi v. Passbase, Inc., No. 21-CV-6728-ER, 2022

WL 2133734, at *7 (S.D.N.Y. June 14, 2022) (finding allegation regarding receipt of a "fixed monthly salary" suggested "employee status" because "[i]ndependent contractors are often paid using lump-sum payments").  Plaintiffs also allege that they used an application for one-off money transfers, "Chase Quickpay," as the method of payment for each of the three lump sums, in lieu of regular pay checks.  (FAC ¶¶ 5, 28, 32-34.)

The FAC contains no allegation that Defendant Crededio received any employee benefits such as health insurance, vacation time, or a pension plan, nor that Defendants withheld taxes from the lump sum payments she received.  Horror Inc., 15 F.4th at 253; see also Aymes, 980 F.2d at 862-63 (collecting cases where courts have "found the hired party to be an independent contractor where the hiring party failed to extend benefits or pay social security taxes").  These last two factors weigh especially heavily in Ms. Crededio's favor because, as the Second Circuit has observed, it would be "inequitable" for Plaintiffs to "benefit from a worker's status as an independent contractor 'in one context' and then" subsequently deny Ms. Crededio "that [independent contractor] status" in order to prevail in this copyright litigation.  Horror Inc., 15 F.4th at 253.  Finally, although Plaintiffs allege that they maintained "control over the composition of the Work" (FAC ¶¶ 75, 79), they fail to allege facts establishing that they maintained control over Ms. Crededio's daily activities, in the manner of a traditional employment relationship.  See, e.g., Mwangi, 2022 WL 2133734, at *5 (finding plaintiff failed to sufficiently allege facts that plausibly suggest that defendant "controlled [her] day-to-day tasks,' in the manner of a traditional employer-employee relationship" (citation omitted)); Reid, 490 U.S. at 752-53 (explaining that the "extent of control the hiring party exercises over the details of the product is not dispositive" and considering the extent to which the hiring party exercised "daily supervision" over the hired party's activities); Tagare v. Nynex Network Sys. Co., 994 F.

Supp. 149, 156 (S.D.N.Y. 1997) ("[M]ost courts within the Second Circuit . . . emphasize the extent of the hiring party's control over the hired party's *daily* activities." (emphasis in original)).

Therefore, even construing all factual allegations in the light most favorable to the Plaintiffs, the Court concludes that Plaintiffs have failed to allege plausibly their authorship of the Work, under either the traditional authorship or work-made-for-hire approaches.  The Court grants Ms. Crededio's motion to dismiss Count One of the FAC.

Count II: Copyright Infringement

Plaintiffs assert a claim for copyright infringement against Ms. Crededio, arguing that they own a "valid copyright of 'Untitled Wyoming Project'[,]" and that Ms. Crededio unlawfully copied Plaintiffs' "original expression from the copyrighted work when she submitted her application for a copyright."  (FAC ¶¶ 145-48).  Plaintiffs also claim that Ms. Crededio's "continued refusal to cancel the November 19, 2019 copyright registration" "constitutes willful infringement of Plaintiffs' rights of exclusive acts concerning the Work." (Id. ¶ 149.)

Because the Court has concluded that Plaintiffs fail to plausibly allege their authorship of the Work, the Court also finds that Plaintiffs fail to state a claim for copyright infringement.  To the extent Plaintiffs argue in their opposition brief that Defendant "is liable for contributory copyright infringement[,]" that cause of action is not asserted in the FAC and the Court therefore declines to address those arguments.

CONCLUSION

For the foregoing reasons, Defendant Crededio's motion to dismiss Plaintiffs' First Amended Complaint as against her is granted in its entirety.  This Memorandum Opinion

and Order resolves docket entry no. 37.  This case continues as against Defendant Doyle and will

be referred to a Magistrate Judge for general pretrial management.


      SO ORDERED.

Dated: New York, New York
      March 31, 2023

                  /s/ Laura Taylor Swain
                  LAURA TAYLOR SWAIN
                  Chief United States District Judge