**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER GENTILE and JUAN A. CRAWFORD,<br><br>                                    Plaintiffs,<br><br>-against-<br><br>KEVIN DOYLE,<br><br>                                   Defendant. | No. 1:21-cv-8528 (LTS)(OTW) |

### STIPULATION AND ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD-COPY DOCUMENTS

Plaintiffs Christopher Gentile and Juan A. Crawford and Defendant Kevin Doyle (collectively, the "Parties", and individually, a "Party") submit this Stipulation and [Proposed] Order Re: Discovery of Electronically Stored Information ("ESI Protocol" or "Protocol") to govern discovery of electronically stored information in this action as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

The Parties and their attorneys do not intend by this protocol to waive their rights to the attorney work-product privilege. The Parties preserve their attorney-client privileges and other privileges, all of which are preserved and protected to the fullest extent provided by law, and there is no intent by this ESI Protocol, or the production of Documents pursuant to this ESI Protocol, to in any way waive or weaken these privileges. The Parties do not waive any objections to the discoverability, admissibility or confidentiality of Documents or ESI. Nothing in this Order shall be interpreted to supersede the provisions of any protective order governing confidentiality and/or privilege entered by the Court in this litigation, unless expressly provided for in such an order. The Parties shall comply with this ESI Protocol to the extent reasonably

feasible.  A Party is not required to comply with any aspect of this Protocol that is unreasonable or infeasible provided that he informs the other Parties in writing at or before the time of production as to why compliance with the Protocol is unreasonable or infeasible.  In such instance, the Parties will meet and confer in good faith on reasonably feasible alternatives.

**1.	DEFINITIONS**

1.1.	"Requesting Party" means and refers to the Party that serves a request for the production of Documents.

1.2.	"Producing Party" means and refers to the Party upon whom a request for the production of Documents is served.

1.3.	"Document" or "Documents" means any writing however recorded, including handwriting, typewriting, printing, photographing, photocopying, transmitting by electronic mail or facsimile and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds or symbols or combinations thereof, and any record created thereby, regardless of the manner in which the record has been stored, and also specifically includes Electronically Stored Information and Hard-Copy Documents.

1.4.	"Document Family" means a Document and all other Documents that are attached to it, the Document to which other Documents are attached being the "Parent", and Documents that are attached to the Parent being the "Children".

1.5.	"Electronically Stored Information" or "ESI" means any Document or Documents stored or transmitted in electronic form.

1.6.	"E-mail" means electronic messages sent using electronic mail protocols (e.g., SMTP).

1.7. "Instant Message" means a non-E-mail form of electronic messaging, including text and group messaging (e.g., Slack, Cisco Jabber, Microsoft Teams, Instant Bloomberg, Google Chat, SMS, MMS, DMs, IMs, iMessage, Microsoft Lync, WhatsApp, WeChat, Facebook Messenger, Signal Private Messenger).

1.8. "E-Document" means a word processing, spreadsheet, presentation, image or other file (other than E-mail or Instant Messages) stored or transmitted in electronic form.

1.9. "Hard-Copy Document" means any Document existing in paper form at the time of collection.

1.10. "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the Native Format of an Excel workbook is a .xls or .xslx file.

1.11. "TIFF Format" means and refers to the format of ESI produced as single-page, black-and-white Group IV TIFFs at a resolution of at least 300 dots per inch (dpi).

1.12. "Metadata" means information about a Document aside from the contents of the Document itself.

1.13. "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, visible text within an image.

1.14. "Confidentiality Designation" means the confidentiality designation affixed to Documents as defined by, and subject to, any Protective Order or any applicable agreement or stipulation entered in this matter.

1.15. "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the text contained within the file or files.

1.16. "Searchable Text" means the text extracted or generated using OCR from any Document that allows the Document to be electronically searched.

1.17. "Load Files" means electronic files provided with a production set of Documents and images used to load that production set into a Requesting Party's Document review platform.

1.18. "Include" and "including" shall be construed to mean "include but not be limited to" and "including, but not limited to".

1.19. "All" and "each" shall both be construed as all and as each.

## 2. IDENTIFICATION OF RESPONSIVE DOCUMENTS

2.1. The Producing Party may apply electronic searches in order to identify potentially responsive ESI. The Parties agree to meet and confer on a search protocol for any such searches, comprising, as appropriate, (a) the sources of ESI that are to be searched; (b) the search terms to be applied against those sources; (c) the date range to be applied against those sources; and (d) any other search criteria or methods to be used to identify potentially responsive ESI. The Parties will timely meet and confer regarding any disputes regarding the search protocol. If the Parties fail to reach agreement as to the protocol, either Party may, but is not required to, bring the dispute to the Court for resolution pursuant to the Court's Individual Rules at Paragraph 2.b and Local Rule 37.2. A Producing Party is not required to apply a search protocol to sources of ESI that are not reasonably likely to contain responsive ESI.

2.2. The fact that the Parties agree to a search protocol shall not preclude a Producing Party from reviewing potentially responsive ESI that is returned by the search protocol in order to make final determinations as to the responsiveness of the ESI and the privilege and other protections applicable to the ESI.

2.3.     Responsive Documents that are identified or reasonably can be identified without the use of an electronic search should be produced regardless of whether they are identified by the search protocol.

2.4.     Instant Messages to be searched electronically shall be processed such that individual messages are grouped into threads (*i.e.*, continuous conversations between one or more individuals) of 24 hours or more to allow for the full context of conversations to be reasonably captured in the search.

2.5.     Where reasonable, a Producing Party may employ means other than the search protocol in order to identify responsive Documents or ESI.

3.     **PROCESSING SPECIFICATIONS FOR ESI**

3.1.     <u>De-Duplication</u>.  A Producing Party may remove Documents identified as duplicative based on MD5 or SHA-1 hash values of the full text of the Documents at the family level across custodians and sources.  The Producing Party shall produce a Metadata field for all produced Documents for which duplicate Documents were removed listing the Custodians that possessed a duplicate Document that was removed.  The Producing Party will update this field no later than 10 days following substantial completion of production.  The above shall not impose on a Party any obligation to produce duplicative documents,

3.2.     <u>E-mail Threading</u>.  The Parties are permitted to use commercially reasonable E-mail threading tools to remove E-mails and their attachments where the contents of the E-mail and its attachments are wholly included within another E-mail that is not removed.

3.3.     <u>De-NISTing</u>.  Each Party will use reasonable efforts to filter out common system files and application executable files.  Non-user generated files may be removed from review and production using the list of non-user generated files maintained by the National Institute of Standards and Technology (NIST).  Additional culling of system files based on file extension

may include: WINNT, LOGS, DRVS, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), temporary files (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), Program Installers. Parties need not produce Documents that are empty or not human-readable, except for good cause shown.

3.4. <u>Hyperlinked Files</u>. Upon a reasonable and particularized request, a Producing Party will, to the extent feasible, produce or identify responsive and non-privileged files referenced by hyperlinks in produced Documents, to the extent such files are in its possession, custody or control. If the Producing Party cannot locate the exact hyperlinked file requested, it will produce the version nearest-in-time to the date and time that the Document containing the link was sent or created.

3.5. <u>Compressed Files</u>. Compression file types (e.g., .CAB, .GZ, .RAR, .TAR, .Z, .ZIP, etc.) shall be decompressed in a manner that ensures a container within a container is decompressed into the lowest uncompressed element resulting in individual files. The container file itself shall not be produced.

3.6. <u>Searchable Text</u>. Text will be extracted directly from the native electronic file of ESI unless the Document requires redaction, is an image file or is any other native electronic file that does not contain text to extract (*e.g.*, non-searchable PDFs), in which case Searchable Text may be created using OCR. Extracted text will include all comments, revisions, tracked changes, speaker's notes and text from Documents with comments or tracked changes, and hidden

worksheets, slides, columns and rows. Extracted text from E-mails will include all header information that would be visible if the E-mail was viewed natively including: (1) the individuals to whom the communication was directed; (2) the author of the E-mail communication; (3) who was copied and blind copied on such E-mail; (4) the subject line of the E-mail; (5) the date and time of the E-mail; and (6) the names of any attachments.

       3.7.    <u>Exception Files</u>.  The Parties will use commercially reasonable efforts to address Documents that present processing or production problems (including encrypted, unsupported, and/or protected files) ("Exception Files").  A Party is not required in the first instance to produce Exception Files it has been unable to resolve through commercially reasonable efforts, except that, upon reasonable request, the Producing Party will undertake reasonable efforts to locate passwords for specifically identified Documents.  Exception Files that are attached to produced Documents will be produced as a Bates-stamped placeholder TIFF bearing the legend, "This Document was unable to be processed".  If the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for resolution pursuant to the Court's Individual Rules at Paragraph 2.b and Local Rule 37.2.

**4.    PROCESSING SPECIFICATIONS FOR HARD-COPY DOCUMENTS**

       4.1.    <u>General</u>.  Hard-Copy Documents are to be scanned in color and produced in TIFF Format as they are kept in the ordinary course.  The Producing Party will treat pages that are stapled or clipped together as a single Document and Documents that clearly appear to be separate Documents as separate Documents; otherwise the Producing Party need not attempt to identify what pages are logically part of the same Document.  For Hard-Copy Documents found in folders or other containers with labels, tabs, or other identifying information, such labels and

tabs shall be scanned where reasonably practicable.  Original Document orientation (i.e., portrait or landscape) should be maintained.

    4.2.    <u>Searchable Text</u>.  For any produced Hard-Copy Documents, the Producing Party shall take reasonable steps to create Searchable Text using OCR.

**5.    PRODUCTION FORMAT**

    5.1.    <u>General</u>.  Except as otherwise provided herein, the Parties will produce Documents in TIFF Format.  Spreadsheets (*e.g.*, Excel files), audio and video files shall be produced in Native Format.  PowerPoint presentations shall be produced in TIFF Format and Native Format.  A Requesting Party may request the production of Native Files of other Documents (*e.g.*, images) where the production of the Native File is reasonably necessary to the Document's comprehension or use, and such request shall not unreasonably be denied.

    5.2.    <u>TIFF Format</u>.  TIFF files will be named according to the corresponding Bates numbered images.  All Documents that contain comments, deletions and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes or other user-entered data that the source application can display to the user will be processed such that all that data is visible in the image.  All TIFF images will be branded in the lower right-hand corner with its corresponding Bates number, and in the lower left-hand corner with its Confidentiality Designation, if any, using a consistent font type and size.  A Requesting Party may request color images of any Documents where color is reasonably necessary to their comprehension or use, and such request shall not unreasonably be denied. Documents produced in color shall be produced as single-page, JPG images with JPG compression and a high quality setting so as to not degrade the original image.

    5.3.    <u>Native Format</u>.  For Documents produced in Native Format, a Bates-stamped placeholder TIFF bearing the legend "This Document has been produced in Native Format" shall

also be produced in the same manner as other TIFFs. Native Files shall have a file name that includes the Bates number and Confidentiality Designation. Any Party downloading, saving, printing or distributing the native file for use in this matter shall append and use the placeholder as a cover sheet to the native file at all times. .

      5.4.    <u>Load Files</u>. For each Document, the Producing Party will provide (1) a delimited text file (DAT) that will include, where the Metadata is reasonably available, the Metadata listed in the Table of Metadata Fields, attached as Attachment A, and (2) an image load file (OPT) for TIFF/JPG images, including Document breaks and page counts. The DAT file should be in Unicode (UTF8) format.

      5.5.    <u>Metadata</u>. The Metadata DAT file shall be delimited according to the following characters:

>   Delimiter = ¶ (ASCII:020)
>   Text-Qualifier = þ (ASCII:254)
>   New Line = ® (ASCII:174)
>   Multi-value delimiter = ; (ASCII Code 059)
>   Nested Value = \ (ASCII:092)

      5.6.    <u>Text Files</u>. A single Document-level text file containing the Searchable Text shall be provided for each Document. The text file name shall be the same as the Bates number of the first page of the Document with the Document extension ".txt" suffixed.

      5.7.    <u>Instant Messages</u>. To the extent Instant Messages are produced, a Party shall produce such messages such that individual messages are grouped into threads (*i.e.*, continuous conversations between one or more individuals) of 24 hours or more to allow for the full context of conversations to be visible. A Requesting Party may make a particularized request for the production of additional messages in the thread where additional messages are reasonably

necessary to the Document's comprehension or use, and such request shall not unreasonably be denied.

5.8. <u>WriterDuet</u>.  For requests in which responsive information is contained in the WriterDuet platform, the Parties will meet and confer to determine an appropriate format.  If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution pursuant to the Court's Individual Rules at Paragraph 2.b and Local Rule 37.2.

5.9. <u>Databases, Structured, Aggregated or Application Data</u>.  For requests in which responsive information is contained in a database or other structured or aggregated data source or otherwise maintained by an application, the Parties will meet and confer to determine an appropriate format.  If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution pursuant to the Court's Individual Rules at Paragraph 2.b and Local Rule 37.2.

5.10. <u>Redactions</u>.  Parties may redact information that is subject to the attorney-client privilege, work product protection or any other applicable privilege or immunity.  Parties may also redact information that is personally or commercially sensitive so long as that information is not responsive to any agreed requests for production.  Redacted Documents will be produced with the associated Metadata for the Document, to the extent possible without compromising the privileged or protected information Redacted Documents shall be identified as such in the Metadata.

5.11. <u>Document Families</u>.  If any member of a Document Family is determined to be responsive to a Party's Document requests, then all members of that Family must also be considered as responsive.  A Document and all other Documents in its attachment range, E-mails with attachments and files with extracted embedded OLE Documents all constitute family

groups. Attachments that are wholly privileged may be excluded from production provided that a slipsheet with the placeholder "Document Withheld as Privileged" is produced. Parent-Children relationships within a Document Family shall be preserved through the production of an appropriate Metadata field.

   5.12. <u>Production Media</u>. The Producing Party will use the appropriate electronic media (CD, DVD, thumb drive, secure FTP or other secure file transfer utility, hard drive or other mutually agreeable media (collectively, "Production Media") for its production, to arrive no later than the day any production is due. The Producing Party will label any physical media with the Producing Party's name; (2) a production number corresponding to the production volume (*e.g.*, "VOL001," "VOL002") (3) the production date; and (4) the Bates Number range of the materials contained on the Production Media.

**6. DISCLOSURE OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

   6.1. The production of privileged or work-product protected Documents, ESI or information, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). In light of this Order, the provisions of Rule 502(b) do not apply.

   6.2. If any Producing Party learns that material over which it claims privilege or protection has been produced, it must promptly notify any Party that has received the material (a "Receiving Party") in writing.

   6.3. Upon notification from any Producing Party that has produced material that it believes is privileged and/or protected, a Receiving Party shall promptly destroy or sequester such material and certify that destruction to the Producing Party.

6.4. Within 7 days of the Producing Party's notification to the Receiving Party that privileged and/or protected information has been disclosed, the Producing Party must provide a complete privilege log entry for each such Document in accordance with the terms of Section 7 *infra*. Any motion to compel production by the Receiving Party must be made within 7 days of receiving the privilege log entry and shall not rely on any portion of the Document(s) at issue other than the information disclosed in the Producing Party's privilege log.

7. **PRIVILEGE LOG**

7.1. The Producing Party will provide the Requesting Party with a log of the Documents withheld for privilege containing information sufficient to enable the Requesting Party to evaluate the claims made, including the following information to the extent reasonably available: Document Number, Custodian, Author/Sender, Recipient, CC Recipient, BCC Recipient, Date, Privilege Basis (*e.g.*, Attorney-Client Communication) and Privilege Justification. "Privilege Justification" refers to a description justifing the Privilege Basis, including as appropriate, the subject matter of the legal advice, and/or the litigation matter for which the Document was prepared. Parties must identify lawyers on their privilege logs by including an asterisk next to their names. To the extent attorneys are not identified in the above fields, they shall be identified in a separate "Attorneys" field. The Parties will exchange privilege logs no later than 30 days following substantial completion of Document discovery, and supplement that privilege log as necessary thereafter.

7.2. A single Document containing multiple E-mails in an E-mail chain may be logged as a single entry. A Document Family may be logged as a single entry so long as the log entry references the attachment(s) and accurately describes both the E-mail and its responsive attachment(s).

7.3. The Parties are not required to log redacted Documents provided that the reason for the redaction is stated in the text of the redaction box (*e.g.*, Attorney-Client Privilege, Work Product, Personally Sensitive, Commercially Sensitive).

7.4. The Parties are not required to log privileged Documents created after the initiation of litigation in this matter, or related matters, on October 15, 2021.

**8.    THIRD-PARTY DOCUMENTS AND ESI**

8.1. A Party that issues a subpoena upon any third party after the execution of this ESI Protocol ("Issuing Party") shall include a copy of this ESI Protocol and any protective order agreed and/or entered in this litigation with the subpoena and state that the Parties in this litigation have requested that third parties produce Documents in accordance with the specifications set forth herein.

8.2. The Issuing Party shall request that third parties produce the same Documents to all Parties simultaneously. In the event that the third party fails to do so (as indicated by, among other means, failing to address both Parties in its production cover letter), the Issuing Party shall produce a copy to all other Parties of any Documents and ESI (including any Metadata) obtained under subpoena to a third party in the same form and format as produced by that third party within fourteen (14) calendar days of receipt from the third party.

8.3. If a third party production is not Bates-stamped, the Issuing Party will endorse the third party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

8.4. Nothing herein shall impact third party productions made prior to the execution of this ESI Protocol.

**9.     GENERAL PROVISIONS**

9.1.    This Order may be modified by a further Stipulated Order of the Parties or by the Court for good cause shown.

9.2.    The Parties will meet and confer to resolve any dispute regarding the application of this Protocol before seeking Court intervention.

Dated: July 10, 2023

| | |
|---|---|
| **GRANT & EISENHOFER P.A.** | **CRAVATH, SWAINE & MOORE LLP** |
| */s/ Thomas Walsh* | */s/ Maylynn Chen* |
| Jay W. Eisenhofer | Michael A. Paskin |
| Caitlin M. Moyna | Maylynn Chen |
| Thomas Walsh | Worldwide Plaza |
| 485 Lexington Avenue | 825 Eighth Avenue |
| New York, NY 10017 | New York, NY 10019 |
| cmoyna@gelaw.com | mpaskin@cravath.com |
| jeisenhofer@gelaw.com | mchen@cravath.com |
| twalsh@gelaw.com | |
| | |
| *Counsel for Plaintiffs and Counterclaim Defendants Christopher Gentile and Juan A. Crawford* | *Counsel for Defendant and Counterclaim Plaintiff Kevin Doyle* |

SO ORDERED:

Dated: July 11, 2023
       New York, New York

_____
THE HONORABLE ONA T. WANG

## ATTACHMENT A

| Field | Definition | Doc Type |
|---|---|---|
| CUSTODIAN | Name of person from where Documents/files were collected or, in the case of non-human sources, a short description of that source (*e.g.*, "Shared Drive"). | All |
| ALL_CUSTODIANS | The Custodian value of the Document as well as the Custodian value for all copies of the Document that were removed as a result of de-duplication. | All |
| BEGBATES | Beginning Bates Number (production number) | All |
| ENDBATES | Ending Bates Number (production number) | All |
| BEGATTACH | First Bates number of family range (*i.e.*, Bates number of the first page of the parent Document) | All |
| ENDATTACH | Last Bates number of family range (*i.e.*, Bates number of the last page of the last attachment or, if no attachments, the Document itself) | All |
| PAGE COUNT | Number of pages in the Document | All |
| APPLICATION | Commonly associated application for the specified file type. | All |
| NATIVE FILE LINK | The file path for Documents provided in Native Format | All |
| TEXTPATH | File path for OCR or Extracted Text files | All |
| FOLDER | Folder location of the E-mail within the PST/OST | E-mail |
| PARENT DATE | Date of the Parent Document (mm/dd/yyyy hh:mm AM/PM) | All |
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Additional Recipients | E-mail |
| BCC | Blind Additional Recipients | E-mail |
| SUBJECT | Subject line of E-mail | E-mail |
| DATESENT | Date Sent (mm/dd/yyyy hh:mm AM/PM) | E-mail |
| DATERCVD | Date Received (mm/dd/yyyy hh:mm AM/PM) | E-mail |
| INSTANT MESSAGE TYPE | The type of electronic message (*e.g.*, Text Message, Slack, WeChat, WhatsApp, etc.) | Instant Messages |
| INSTANT MESSAGE PARTICIPANTS | Senders, recipients, subscribers, or others who have the ability to participate in a group message or channel | Instant Messages |
| INSTANT MESSAGE SUBJECT | Subject or name of the messaging thread or topic, if any | Instant Messages |

| Field | Definition | Doc Type |
|---|---|---|
| INSTANT MESSAGE CHANNEL | Name of persistent messaging group or chat room, if any | Instant Messages |
| INSTANT MESSAGE DATE | Date of last Instant Message in thread | Instant Messages |
| CONVERSATION ID | Identifier indicating the E-mail thread to which an E-mail belongs | E-mail |
| HASHVALUE | Hash value (*e.g.*, MD5 or SHA-1) | All |
| FILENAME | Original file name at the point of collection | E-Document |
| TITLE | Internal Document property | E-Document |
| AUTHOR | Creator of a Document | E-Document |
| DATE CREATED | Creation Date (mm/dd/yyyy hh:mm AM/PM) | E-Document |
| DOCUMENT TYPE | Descriptor for the type of Document, including: "**E-mail**" for all E-mails; "**Instant Message**" for all Instant Messages; "**Attachment**" for files that were attachments to E-mails or Instant Messages; "**Electronic File**" for electronic files not attached to E-mails or Instant Messages; and "**Hard Copy**" for Hard-Copy Documents | All |
| REDACTED | "Yes" for redacted Documents; "No" for un-redacted Documents. | All |
| PRODVOL | Name of media that data was produced on. | All |
| CONFIDENTIALITY | Confidentiality level if assigned pursuant to any applicable agreement or stipulation. | All |
| TIMEZONE | Time zone of data used during processing of data. | All |
| SOURCE | The producing party | All |
| ATTACHIDS | The IDs of the Documents that are attached to the produced Document | All |
| PARENT ID | Indicates the parent ID for an attachment or embedded Document. The parent Document ID field should be set for all attachments (including attachments that are E-mails) but should not be set for parents. | All |
| MESSAGE ID | The message ID of an E-mail or other type of electronic message | E-mail, Instant Message |