UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

CHRISTOPHER GENTILE and JUAN A.
CRAWFORD,

      Plaintiffs,

 -v-                                                                 No.  1:21-cv-08528-LTS

KEVIN DOYLE,

      Defendants.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Plaintiffs Christopher Gentile and Juan A. Crawford (together, "Plaintiffs") bring this action against Kevin Doyle ("Defendant"), alleging that Mr. Doyle and his former co-defendant, Cassi Crededio, applied for, and received, copyright registrations of versions of a draft screenplay without proper authorization. Plaintiffs allege that they are the sole owners and authors of at least one version of that draft screenplay and assert claims for declaratory relief and copyright infringement. (See docket entry no. 52 ("Second Amended Complaint" or "SAC").) Before the Court is Mr. Doyle's motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted or, in the alternative, pursuant to Federal Rule of Civil Procedure 12(f) to strike certain allegations and requests for relief against Ms. Crededio. (Docket entry no. 56 (the "Motion").) The Court has jurisdiction of the dispute pursuant to 28 U.S.C. sections 1331 and 1338(a).

The Court has reviewed carefully the submissions in connection with the instant motion. For the following reasons, Mr. Doyle's motion to dismiss the Second Amended Complaint is granted in its entirety.

BACKGROUND

Factual Background

The following facts, drawn from the Second Amended Complaint, are taken as true for the purposes of the instant motion practice.

The Untitled Wyoming Project

This case concerns ownership of two draft versions of a screenplay referred to as the "Untitled Wyoming Project" or "The Monarch" (the "Work" or the "Untitled Wyoming Project"). Mr. Gentile first conceived of the idea for the Work approximately fifteen years ago, when he was inspired by the idea of a show "focused around a flawed female heroine." (SAC ¶¶ 24-25.) After learning that Wyoming was the "first state or territory in the nation to grant suffrage to women, in 1869[,]" Mr. Gentile decided to create a show based upon the women's suffrage movement in the American West, led by a "madam" in the Wyoming area who "ran a brothel" and also "championed women's rights." (Id. ¶¶ 25-26.) Mr. Gentile shared this idea with his long-time friend and colleague, Mr. Crawford, and together, they "conducted extensive research" into the relevant historical period. (Id. ¶ 27.) Plaintiffs then worked together to draft "the early versions of" a television series "focused on the role that madams of brothels in [the] American West played in bring[ing] suffrage rights to women." (Id. at ¶ 28.) Mr. Crawford submitted a short draft of "the first few scenes" of the Work to the Writers Guild of America (the "WGA"). (Id.; see also id. at ¶ 40 (describing the version submitted to the WGA as the "first pages of the Work").)

The First Script

Mr. Crawford met Ms. Crededio on a set for a different project in which Mr. Crawford had an acting role and mentioned that "he and Mr. Gentile were looking for assistance

with fleshing out some of their original ideas into a working script." (SAC ¶ 29.) Ms. Crededio was subsequently hired and entered into a Confidentiality Agreement with Mr. Gentile on October 22, 2019, agreeing to "treat all Confidential Information" including "materials relating to Untitled Wyoming Project" with "the strictest confidence." (Id. ¶ 31.) Ms. Crededio collaborated with Plaintiffs over about a three-week period, from October 14, 2019, to November 2, 2019, during which time she "provided written contributions" to the opening scenes of the Untitled Wyoming Project (the "First Script").[1] (Id. ¶ 33.) During this time, "Ms. Crededio was given explicit instructions by Mr. Gentile and Mr. Crawford with regard to: creation of characters, descriptions of scenes, development of themes, and specific dialog." (Id. ¶ 34.) "After contributing to three acts of the script, Plaintiffs and Ms. Crededio parted ways[,]" and "Ms. Crededio was paid a sum of $500 for her contributions to each completed act." (Id. ¶ 36.)

After completing the draft of the first three acts of the screenplay, Ms. Crededio registered the draft with the U.S. Copyright Office. (SAC ¶ 70.) Although Plaintiffs' claims against Ms. Crededio have been dismissed (see docket entry no. 47), Plaintiffs assert that Ms. Crededio's "filing of her registration statement constituted . . . fraud on the U.S. Copyright Office" because "she falsely represented that she was the sole owner and author of the work" (SAC ¶ 72; see also id. ¶¶ 73-76).

The Second Script

Plaintiffs allege that the "'Untitled Wyoming Project' has gone through many adaptations and permutations," since Ms. Crededio's relationship with Plaintiffs deteriorated "and, as of the filing of this Second Amended Complaint, is still not finished." (SAC ¶ 37.) Mr.

---

[1] The First Script is attached to the Second Amended Complaint as Exhibit A. (Docket entry no. 52-1.)

Doyle "was allowed to oversee" one of these adaptations (the "Second Script")[2] "[a]round the time Ms. Crededio ceased her working relationship with Plaintiffs . . . due to his close friendship with Mr. Gentile."  (Id. ¶ 11.)

Plaintiffs allege both (i) that the Second Script "was solely authored by Plaintiffs" and (ii) that Mr. Doyle "contribute[d]" "revisions, adaptions, [and] development of . . . 'Untitled Wyoming Project's' script, characters, scenes, setting, stage direction, [and] dialogue" (albeit "at Plaintiffs' explicit direction").  (SAC ¶¶ 79-80.)  Plaintiffs allege that "all of [Mr. Doyle's] contributions" to the Second Script "rest[] in the form of two draft scripts and a format bible," which were not "made independently of Plaintiffs' explicit direction."  (Id. ¶ 80.)  The Second Amended Complaint further alleges that Plaintiffs "dictated" descriptions of various characters, settings, and plot points and "were responsible for most of the drafting" of one vignette.  (Id. ¶¶ 86-117.)

While drafting the Second Script in the spring and summer of 2020, Mr. Doyle discussed pitching the Untitled Wyoming Project to various entertainment companies.  (SAC ¶¶ 119-20.)  Plaintiffs told Mr. Doyle, "on multiple occasions, that they had no interest in pitching their project in its current state," but "Mr. Doyle independently pitched the Work to the entertainment company Zero Gravity Management."  (Id. ¶ 120.)  Plaintiffs "ceased associating with Mr. Doyle" when they learned that he "had secretly approached Zero Gravity and falsely portrayed Untitled Wyoming Project as his own work product."  (Id. ¶ 123.)

---

[2]   The Second Script is attached to the Second Amended Complaint as Exhibit B.  (Docket entry no. 52-2.)

In October 2020,[3] "Plaintiffs learned that Mr. Doyle had applied for, and been granted, a registration of the Work with both the WGA and the U.S. Copyright Office." (SAC ¶ 124.) The registration, which refers to the Second Script as "Wonderland: *The Equality State*," "lists Ms. Crededio as providing Mr. Doyle with permission to file his registration. . . ." (Id. ¶¶ 124-25.) As soon as Plaintiffs learned of the copyright registration, Plaintiffs sent Mr. Doyle a cease-and-desist letter. (Id. ¶ 128.) After one month had passed without a response from Mr. Doyle, Plaintiffs applied for, and were granted, their own copyright registration of the Untitled Wyoming Project, using the same script that Mr. Doyle had registered as his own work. (See id. at 127, 129.) Mr. Doyle responded to the cease-and-desist letter in March 2021 to "notify[] Plaintiffs that he had no intention to stop his unlawful infringement of Plaintiffs' Work." (Id. ¶ 135.)

Procedural History

In anticipation of Plaintiffs' filing of the First Amended Complaint, on July 1, 2022, Judge Broderick, to whom this case was previously assigned, denied as moot Ms. Crededio's motion to dismiss the original pleading. (Docket entry no. 28.) In that order, Judge Broderick expressed his "concerns about whether Plaintiffs [had] adequately plead[ed] their authorship of the Work" because the "allegations seem[ed] to plead only that [Plaintiffs] provided Crededio with 'ideas,' rather than that they provided any particular 'manner[s] of expression' that became part of the Work." (Id. at 4 (citation omitted).) Judge Broderick noted that Plaintiffs failed to "plead any 'written instrument' through which they and Crededio agreed that the Work 'shall be considered a work made for hire[,]'" and observed that the "Complaint

---

[3] It was also around this time that Plaintiffs were made aware of the copyright registrations filed by Ms. Crededio. (SAC ¶ 8.)

appear[ed] to portray Crededio as an 'independent contractor when [s]he produced the' Work." (Id. at 4-5 (citations omitted).)  In directing Plaintiffs to file an amended complaint, Judge Broderick instructed that the revised pleading "should include . . . some or all of the following: (1) a copy of the Work; (2) copies of the 'physical outlines,' 'rough drafts,' or other work product 'provided by the Plaintiffs' to Crededio demonstrating Plaintiffs' alleged authorship of the Work . . . [;] (3) allegations about which specific parts of the Work they believed they authored; and (4) if it exists, any written employment agreement Plaintiffs entered into with Crededio[,]" in order to meet their "burden to plead sufficient 'factual content'" to render their claims plausible.  (Id. at 5-6 (citations omitted).)  In the First Amended Complaint, Plaintiffs described the portions of the scenes they claim to have "authored," been "responsible for," and "dictated."  (Docket entry no. 31 (the "First Amended Complaint" or "FAC") ¶¶ 43-65.)  Plaintiffs also attached as Exhibit A to the First Amended Complaint "the version of the script as it existed when they ceased to employ Ms. Crededio on or about November 2, 2019."  (Id. ¶ 40.)

        Mr. Doyle filed an amended answer and counterclaims (docket entry no. 39), and Ms. Crededio moved to dismiss the claims against her (docket entry no. 37).  On March 31, 2023, this Court granted Ms. Crededio's motion in its entirety. (Docket entry no. 47 (the "Order").)  In that Order, the Court held that Plaintiffs' allegations that they "conceived of the idea for the Work, conducted significant research into developing their idea, . . . committed their early conceptions to writing in the form of outlines [and a WGA submission]" and "dictated the details of scenes, characters, plot points, and dialog" were insufficient to render their claims of "authorship" plausible.  (Id. at 7-8.)  The Court further found that Plaintiffs' allegations that they "dictated" or "were responsible for" elements of the script to be "replete with legal

conclusions[,]" "vague[,]" and "devoid of factual detail about the scope of their responsibility." (Id. at 9.)

Pursuant to the Court's Individual Practices, Mr. Doyle informed Plaintiffs that, in light of the Court's Order, he intended to move for judgment on the pleadings on the claims against him and asked whether they intended to amend the First Amended Complaint. (Docket entry no. 49.) Plaintiffs indicated that they sought to amend their claims against Mr. Doyle (id.) and filed the Second Amended Complaint on May 5, 2023. Mr. Doyle subsequently filed a motion to dismiss the pleading or, in the alternative, to strike allegations and requests for relief against Ms. Crededio. After Mr. Doyle's Motion was fully briefed, Ms. Crededio filed a letter supporting Mr. Doyle's motion to strike portions of the Second Amended Complaint related to Ms. Crededio and reserving her right to intervene "if and when the circumstances warrant." (Docket entry no. 70 ("Crededio Letter") at 2.)

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). A complaint cannot simply recite legal conclusions or bare elements of a cause of action; it must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Under the Rule 12(b)(6) standard, the court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

Count One: Declaratory Judgment[4]

Plaintiffs assert a claim pursuant to the Declaratory Judgment Act, seeking declarations (1) "that the copyright registration held by Ms. Crededio is invalid on account of her committing fraud on the U.S. Copyright Office"; (2) "that the copyright registrations held by Mr. Doyle are invalid"; and (3) "that their copyright registration is valid, and Plaintiffs therefore are co-owners and authors of the Work with Ms. Crededio and are the sole authors of" the Second Script. (SAC ¶¶ 140-42.)[5]  Not one of Plaintiffs' requests is legally viable.

Claims Against Ms. Crededio

Notwithstanding their assertion to the contrary, there is no doubt that, in their request for declaratory judgments, Plaintiffs seek relief against Ms. Crededio, their claims against whom have already been dismissed. Indeed, the Second Amended Complaint explicitly seeks a declaration "that the copyright registration held by Ms. Crededio is invalid on account of her committing fraud on the U.S. Copyright Office." (SAC ¶ 140.) Plaintiffs' assertion that the Second Amended Complaint does not seek relief against Ms. Crededio (docket entry no. 66 ("Pl.

---

[4]  Plaintiffs' Count One demands a "declaratory judgment pursuant to 28 U.S.C. §§ 2201 re Rights of 'Untitled Wyoming Project.'" (SAC ¶¶ 137-43.) Declaratory judgment is a type of relief, not an independent cause of action. For this reason, the Court analyzes this cause of action as a claim seeking declaratory relief in the context of alleged copyright infringement.

[5]  The Second Amended Complaint also seeks, in the alternative, a declaration "that Plaintiffs and Mr. Doyle are co-authors of the Derivative Work." (SAC ¶ 143.) Because Plaintiffs do not mention this request in their opposition to the Motion (see docket entry no. 66 ("Pl. Mem.")), the Court concludes that Plaintiffs have abandoned their alternative strategy. See Williams v. Westchester Med. Ctr. Health Network, No. 21-CV-3746-KMK, 2022 WL 4485298, at *5 n.16 (S.D.N.Y. Sept. 27, 2022) (citation omitted) ("Courts in this Circuit have presumed that plaintiffs have abandoned their claims when they do not oppose a motion to dismiss them.").

Mem.") at 17) is plainly inconsistent with the face of their pleading.  Plaintiffs' assertion of claims that would affect Ms. Crededio's rights in the First Script is improper under Federal Rule of Civil Procedure 15, which requires court permission or opposing party consent for amendments that are not made as of right.  Ms. Crededio did not consent to, and the Court did not grant Plaintiffs leave to file, new claims against her.  After the Court dismissed the First Amended Complaint against Ms. Crededio, the remaining parties met and conferred regarding Mr. Doyle's intent to file a motion for judgment on the pleadings.  (See docket entry no. 49.)  Those discussions produced a stipulation, in which Mr. Doyle consented to the filing of "Plaintiffs' second amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2)."  (Id.)  Not only does the stipulation make clear that Mr. Doyle consented only to Plaintiffs' intent "to amend their claims against Doyle" (id.), but Plaintiffs have also not even attempted to make a showing that Mr. Doyle was authorized to consent to the assertion of claims against Ms. Crededio.  See Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave.")  Nor did Magistrate Judge Wang, in authorizing the filing of the Second Amended Complaint pursuant to the stipulation, suggest that Plaintiffs could reassert claims against Ms. Crededio.  (Docket entry no. 51.)

    A court can address failure to comply with Federal Rule of Civil Procedure 15(a)(2) in a number of ways, including by striking the complaint.  Cummings v. Adidas USA, 08-CV-9860-SAS, 2009 WL 3270888, at *1 (S.D.N.Y. Oct. 5, 2009).  Here, the allegations concerning Ms. Crededio and the elements of the Second Amended Complaint that, in essence, seek relief against her are unauthorized and inconsistent with the earlier dismissal of the claims against her.  The simplest solution is the most appropriate one here: Plaintiffs' claims concerning

Ms. Crededio, including the allegations concerning the validity of her purported copyright, are stricken from the Second Amended Complaint.

Claims Against Mr. Doyle

With the claims against Ms. Crededio stricken, two remaining declaration demands remain in the Second Amended Complaint. Plaintiffs seek declarations (1) "that the copyright registrations held by Mr. Doyle are invalid"; and (2) "that [Plaintiff's] copyright registration is valid, and Plaintiffs are therefore . . . the sole authors of" the Second Script. (SAC ¶¶ 141-42.) There is no legal authority for the first request, and the factual allegations proffered in the Second Amended Complaint are not sufficient, as a matter of law, to support either request.

As an initial matter, "[n]othing in the Copyright Act, nor any other federal statute, grants federal courts the power to cancel or nullify a copyright registration." Pastime LLC v. Schreiber, No. 16-CV-8706-JPO, 2017 WL 6033434, at *3 (S.D.N.Y. Dec. 5, 2017). Plaintiffs' request for a declaration "that the copyright registrations held by Mr. Doyle are invalid" (SAC ¶ 141) is, therefore, not legally cognizable and must be dismissed.

Plaintiffs' request for a declaration "that their copyright registration is valid, and Plaintiffs . . . are the sole authors of" the Second Script (SAC ¶ 142) fares no better. While a declaration that a copyright is valid is a remedy that a court can grant (Schreiber, 2017 WL 6033434, at *4), Plaintiffs have not alleged facts sufficient to support their underlying premise—that Plaintiffs are the sole authors of the Second Script. Taking all of Plaintiffs' allegations as true, the Second Amended Complaint itself alleges facts indicating that Mr. Doyle made copyrightable contributions to the Second Script. "Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression. . . ." 16 Casa Duse, LLC v.

Merkin, 791 F.3d 247, 256 (2d Cir. 2015) (quoting 17 U.S.C. § 102(a)).  The Second Amended Complaint alleges that "Mr. Doyle assisted Plaintiffs in drafting" the Second Script (SAC ¶ 4), and that Mr. Doyle "revis[ed]," "adapt[ed]," "develop[ed]," and "contributed" to the "'Untitled Wyoming Project's' script, characters, scenes, setting, stage direction, or dialog" (id. ¶ 79).  Indeed, Plaintiffs specifically allege that Mr. Doyle wrote down his contributions to the Second Script "in the form of two draft scripts and a format Bible."  (See id. ¶¶ 80, 83.)  These alleged facts defeat Plaintiffs' conclusory claims of sole authorship.

That the Second Amended Complaint also alleges that these contributions "were done at Plaintiffs' explicit direction" (SAC ¶ 79) does not alter this conclusion.  For substantially the same reasons that the Court's Order explained in its analysis of nearly identical allegations regarding Plaintiffs' contributions to the First Script, Plaintiffs' allegations regarding their contributions to the Second Script in the Second Amended Complaint are "vague and devoid of any factual detail about the scope of their responsibility and how that responsibility relates to the language used in the actual written work." (Order at 9.)   The Second Amended Complaint, like the First Amended Complaint before it, alleges that Plaintiffs "authored," "created," "introduced," "dictated," or "were responsible for" characters and character motivations, settings, action, dialogue, plot points, camera angles, wardrobes, and backstories in the Second Script.  (SAC ¶¶ 86-117.)  Yet again, as Defendant observed, the Court's review of the Second Script attached as Exhibit B to the Second Amended Complaint "reveals that many of the elements Plaintiffs claim to have 'authored' or 'dictated' amounted to broad conceptions or ideas for the Work that are not copyrightable" and required substantial expansion to transform into a viable screenplay.  (Docket entry no. 57 ("Def. Mem.") at 8 (quoting Order at 9).)  Because Plaintiffs do not allege that they translated any broad conceptions or ideas into "tangible

medium[s] of expression," their vague allegations do not support their claim of sole authorship of the Second Script.  Merkin, 791 F.3d at 256.

Therefore, even construing all factual allegations in the light most favorable to the Plaintiffs, the Court concludes that Plaintiffs have failed to adequately allege their sole authorship of the Second Script.  The Court grants Mr. Doyle's motion to dismiss Count One of the Second Amended Complaint.

Count II: Copyright Infringement

Plaintiffs also assert a claim for copyright infringement against Mr. Doyle, arguing that they own a "valid copyright of 'Untitled Wyoming Project'[,]" and that Mr. Doyle unlawfully "copied Plaintiffs' original expression from the copyrighted work when he submitted his application for a copyright to the U.S. Copyright Office and when he pitched the Work to talent agencies, including 'Zero Gravity Management.'"  (SAC ¶¶ 145-48).  Plaintiffs also claim that Mr. Gentile's "continued refusal to cancel the October 9, 2020 copyright registration, and cease the pitching of [the Second Script] to talent agencies after being given notice by Plaintiffs that such refusal infringes on Plaintiffs' rights constitutes" copyright infringement.  (Id. ¶ 150.)

It is well established that "coauthors cannot sue one another for copyright infringement."  Kwan v. Schlein, 634 F.3d 224, 229 (2d Cir. 2011).  The Court has already concluded that, even construed in the light most favorable to Plaintiffs, the Second Amended Complaint fails to plausibly allege Plaintiffs' sole authorship of the Untitled Wyoming Project— and instead alleges that Mr. Doyle made creative contributions to the script and fixed his work product in written form, such that at least some aspects of the Second Script are his own copyrightable work.  In other words, because the Second Amended Complaint identifies Mr.

Doyle's independently copyrightable contributions to the Second Script, the Court also finds that Plaintiffs fail to state a claim for copyright infringement.

To avoid this inevitable conclusion, Plaintiffs dedicate most of their brief to arguing that (1) they co-authored the First Script with Ms. Crededio, and (2) Mr. Doyle did not receive written permission from Ms. Crededio to register a copyright in the Second Script. Plaintiffs concede that "they did not register" a copyright in the First Script that they allege to have co-authored with Ms. Crededio, but they clarify that their theory is that, because "Mr. Doyle did not receive proper permission to register" the Second Script, "his copyright in the [Second Script] is not valid, and his efforts to shop the [Second Script] infringe Plaintiffs' copyright of the [Second Script]."  (Pl. Mem. at 15 n.1.)  This theory, however, cannot support their claim for copyright infringement.  The "central contention – that a derivative work[] cannot be protected by copyright without the permission of the original copyright owner – is a contention [with] no basis in law."  Poppington, LLC v. Brooks, No. 20-CV-8616-JSR, 2021 WL 3193023, at *5 (S.D.N.Y. July 27, 2021) (internal citation and quotation marks omitted); see also Keeling v. New Rock Theater Prods., LLC, No. 10-cv-9345-TPG, 2011 WL 1899762, at *1 (S.D.N.Y. May 17, 2011) ("[N]owhere is it stated that the creator of a derivative work cannot copyright the new portions of that derivative work without permission from the creator of the original work.").  In other words, it does not matter whether Plaintiffs co-authored the First Script with Ms. Crededio, or whether Ms. Crededio gave Mr. Doyle valid permission to register a copyright in the Second Script; Mr. Doyle did not need permission from the owners of the First Script to copyright the Second Script.  The Court thus concludes that, because the Second Amended Complaint fails to allege enough facts to support Plaintiffs' claim of sole authorship,

Plaintiffs have failed to adequately allege copyright infringement, and the Court grants Mr. Doyle's motion to dismiss Count Two of the Second Amended Complaint.

## CONCLUSION

For the foregoing reasons, Mr. Doyle's motion to dismiss the Second Amended Complaint is granted in its entirety and each of the claims asserted therein is dismissed with prejudice. This Memorandum Opinion and Order resolves docket entry no. 56. Mr. Doyle's counterclaims remain pending, and this case remains referred to Magistrate Judge Wang for general pretrial management.

SO ORDERED.

Dated: New York, New York
January 2, 2024

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge